Sophia Rios (305801)
**BERGER MONTAGUE PC**
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

Ingrid M. Evans (SBN 179094)
**EVANS LAW FIRM, INC.**
3053 Fillmore St. #236
San Francisco, CA  94123
Tel. : (415)441-8669
Fax : (415)891-4906
ingrid@evanslaw.com

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| KEVIN ISAACSON and LOURDES ISAACSON individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN HANCOCK INSURANCE AGENCY INC., STARR INDEMNITY AND LIABILITY COMPANY, and SEVEN CORNERS INC.<br><br>Defendants. | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**(1) QUASI-CONTRACT/UNJUST ENRICHMENT/RESTITUTION;**<br><br>**(2) VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, Business & Professions Code §§ 17200 *et seq*.**<br><br>**DEMAND FOR JURY TRIAL** |

EVANS LAW FIRM, INC.

Plaintiffs Kevin and Lourdes Isaacson ("Plaintiffs") allege, on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and their acts and as to all other matters upon information and belief, as follows:

## **INTRODUCTION**

1.      This is a class action for restitution against John Hancock Insurance Agency, Inc. ("John Hancock"), Starr Indemnity & Liability Company ("Starr"), and Seven Corners Inc. ("Seven Corners") (collectively "Defendants") arising from their wrongful conduct towards Plaintiffs and other similarly situated insurance policyholders. Plaintiffs and the Class  they seek to represent: (1) purchased a single-trip travel protection plan from Defendants which included a bundled  array of travel-related insurance benefits offering coverage for both pre- and post-departure perils; (2) cancelled their insured travel prior to the scheduled departure date; but (3) did not receive a *pro rata* refund for that portion of the gross policy premium which was paid exclusively for post-departure coverages that were unearned by Defendants because of the cancellation of those trips.

2.      Plaintiffs and the Class they seek to represent have suffered injury in the form of monetary loss because they paid premiums for insurance coverages that could not materialize due to cancellation of their trips. Defendants were never exposed to, or assumed, any transferred risk of loss.

3.      Travel insurance products provide reimbursement in the event of financial loss or hardship related to travel. Travel insurance is available to cover a wide array of perils associated with travel, including both pre-departure risks, such as the possibility that a traveler will lose pre-paid nonrefundable deposits or payments if a trip is canceled prior to departure, as well as risks that arise exclusively post-departure, such as interruption of a trip, medical or dental emergencies during a trip, and lost, stolen or damaged baggage. By its nature, this

second category of coverages -- exclusively for post-departure risks -- is insurance coverage providing coverage for travel related perils that can only arise after travel is underway.

4.    Plaintiffs bought a single-trip "Travel Insurance Policy" distributed by John Hancock that was underwritten by Starr and administered by Seven Corners. Plaintiff's Travel Insurance Policy is attached hereto as Exhibit A.

5.    Defendants offer a variety of single-trip Travel Insurance Policies which can include some or all of the travel insurance protections offered by Defendants. Plans offered include "Bronze," "Silver," and "Gold" plans. Typically, the more perils covered, the more expensive is the gross premium for all the policy coverages combined within a single plan.

6.    The Travel Insurance Policies sold by Defendants include travel insurance benefits that are applicable exclusively post-departure, meaning that Defendants are not at risk of having to cover the associated risks prior to commencement of actual travel by the insured.

7.    When a customer purchases a Travel Insurance Policy from Defendants, he or she receives documents that lay out the benefits and conditions of the policy. These documents, which include a "Schedule of Benefits," "Confirmation of Benefits," "Receipt of Purchase," "Wallet ID Card," and "Summary of Benefits", describe the terms and conditions of the purchased travel insurance for coverage in the event there is a sudden, unexpected problem or event before or during travel as well as any exclusions. These documents delineate the different policy benefits the insured purchased through his or her particular Travel Insurance Policy and the coverage limits of each corresponding benefit.

8.    Defendants can readily identify the *pro rata* share of the gross premium which is attributable to each bundled policy benefit purchased by each insured under that person's specific plan, including those relating solely to post-departure benefits.

9.     When a policyholder informs Defendants that their trip is cancelled for whatever reason, Defendants do not return the *pro rata* portion of the gross premium which the insured paid exclusively for coverage of post-departure risks – which risks are never assumed by, or transferred to Defendants, when his or her trip is cancelled prior to commencement of actual travel.

10.     This is despite the fact that Defendants' Travel Insurance Policies do not address how they handle premium refunds for any portion of the gross insurance premium that was paid in advance for post-departure coverages that were in fact never provided (in the event of cancellation of the trip).

11.     "If an insurer assumes no risk in a contract for insurance, then the insurer has suffered no bargained for detriment, and in the absence of that consideration the insured's premium must be returned." *Anderson v. Travelex Ins. Servs., Inc.*, No. 8:18-CV-362, 2019 WL 1932763, at *3 (D. Neb. May 1, 2019)

12.     When an insured's trip is cancelled prior to departure, Defendants are obligated to return the portion of the premium paid for coverage of risks that are only applicable post-departure. This is because the portion of the gross premium paid in exchange for these exclusively post-departure benefits is unearned inasmuch as Defendants were never at risk of having to cover the perils of actual travel.

13.     The American Academy of Actuaries Travel Insurance Task Force found in its 2018 report that: "if a policy includes only benefits that cover post-departure exposures (e.g., trip interruption, medical), *there is no risk exposure between the policy purchase date and the departure date. Consequently, no premium should be earned for the pre-departure period.*" American Academy of Actuaries Travel Insurance Task Force, "Travel Insurance: An Actuarial Perspective," at 18 (Sept. 2018) (emphasis added).[1]

_____

[1] https://www.actuary.org/sites/default/files/files/publications/TravelInsurance Monograph_09052018.pdf

14.     When an insured's trip is cancelled prior to departure, Defendants do not provide any consideration in return for the portion of the gross premium connected with post-departure perils, which Defendants always require be paid in advance of travel.

15.     Defendants' systematic failure to return the unused and unearned premium to purchasers of Defendants Travel Insurance Polices is unconscionable, unjust, unfair, and unlawful. Each member of the proposed Class (defined below) has been similarly injured financially by Defendants' misconduct, and is entitled to restitution of the portion of the gross premium that Defendants accepted in exchange for insuring against post-departure risks, but for which they never provided any coverage (*i.e.*, assumed the specified risks) in return.

## THE PARTIES

**Plaintiffs**

16.     Plaintiff Kevin and Lourdes Isaacson are natural persons who at all relevant times resided in Saugus, California.

**Defendants**

17.     Defendant John Hancock Insurance Agency, Inc. is a Delaware limited liability company headquartered in Boston, Massachusetts. John Hancock is the "agency/distributor" of the Travel Insurance Policies, and a subsidiary of Manulife.

18.     Starr Indemnity & Liability Company is a Texas company with its principal place of business in New York, New York. Starr is the underwriter/insurer obligated to the insured for the payment of benefits provided under the Travel Insurance Policies.

19.     Seven Corners Inc. is an Indiana corporation headquartered in Carmel, Indiana. Seven Corners is the plan administrator of the Travel Insurance Policies.

EVANS LAW FIRM, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EVANS LAW FIRM, INC.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one member of the proposed class is of diverse citizenship from one defendant, there are more than 100 class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

21.    This Court has personal jurisdiction over Defendants because they conduct substantial business in California. Defendants conducted systematic and continuous business activities throughout California and otherwise intentionally availed themselves of the market in California through the promotion, marketing sale, and administration of their products, including the Travel Insurance Policies.

22.    Venue lies within the Western Division of this judicial district under 28 U.S.C. § 1391(b)(2) because the Travel Insurance Policy was sold and delivered to Plaintiffs at their residence in Saugus, Santa Clarita, Los Angeles County and thus a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.    Defendants' Travel Insurance Policies and Practices

23.    Defendants sell single-trip travel insurance policies. These policies are designed specifically to cover the perils associated with a specific trip.

24.    Pursuant to an agreement among John Hancock, Starr, and Seven Corners, Seven Corners is responsible for collecting and refunding premium payments in connection with the travel insurance distributed by John Hancock and underwritten by Starr.

25.    Defendants offer a variety of Travel Insurance Policies each of which includes insurance benefits. These Travel Insurance Policies protect against perils for both pre-departure and post-departure events.

26.     Pre-departure insurance coverage is provided as "Trip Cancellation" which can cover the costs of a cancelled trip if the trip is cancelled for a covered reason. Defendants also provide an optional additional insurance benefit of "Trip Cancellation For Any Reason" which allows an insured to recover some of the costs of the covered trip as long as the trip is not cancelled for an excluded reason.

27.     Defendants' Travel Insurance Policies also contain at least one insurance benefit covering a peril which can *only* arise post-departure and has zero possibility of ever occurring prior to commencement of the single insured trip. The post-departure insurance coverages offered in Defendants' Travel Insurance Plans include, by way of example, benefits for Trip Interruption, Trip Delay, Baggage Delay, Missed Connection, Emergency Accident and Emergency Sickness Medical Expense, Accidental Death and Dismemberment, and Repatriation of Remains.

28.     The time for which various insurance coverage takes effect differs depending on the type of coverage. For example, the pre-departure insurance for Trip Cancellation coverage begins "12:01 A.M. local time, at Your location on the day after the required premium for such coverage is received by Us or Our administrator as shown in the confirmation of benefits." *See* Exhibit A, "Travel Insurance Policy," "Section III. Eligibility And Period of Coverage", at page 4 of 11.

29.     Post-departure coverages, on the other hand, are not effective until the trip has commenced. In the Travel Insurance Policy sold to Plaintiffs, the Trip Delay coverage "is in force while en route to the Covered Trip from Your home and also while en route from the Covered Trip to Your Home." *See* Exhibit A, "Travel Insurance Policy," "Section III. Eligibility And Period of Coverage", at page 4 of 11. All other post-departure coverages begin "at the later of the time of Your departure on the Scheduled Departure Date; or Your actual departure for Your Covered Trip." *Id*.

30.    Regardless of the purchase platform utilized, or the specific benefits included in any purchased Travel Insurance Policy, Defendants, as a matter of standard course and practice, do not refund any portion of the gross premium paid, including those premiums paid exclusively in exchange for post-departure coverage even when an insured does not commence the insured trip.

31.    This practice is wrong. Defendants are not at risk of ever having to cover any post-departure perils until an insured begins his or her trip. When an insured trip is cancelled prior to departure, Defendants have neither accepted nor assumed any transferred risk of loss associated with post-departure perils, and as such, provide no consideration in exchange for, and have not earned, the premiums they have been paid to cover those particular risks. Therefore, when an insured's trip is cancelled prior to commencement, Defendants are required, but systematically fail, to return the *pro rata* portion of any gross premium already paid which represents the Defendants' charges for purportedly insuring against post-departure perils.

32.    Indeed, Defendants provide no coverage for post-departure perils until the trip is actually commenced. Thus, in the event of trip cancellation, any coverage pre-paid by the policyholder for post-departure perils is illusory since Defendants do not provide any consideration in exchange for that portion of the gross premium allocable to such perils.

**B.    Plaintiffs' Travel Insurance Policy and Cancelled Trip.**

33.    In February 2020, Plaintiff Lourdes Isaacson booked travel for herself and her husband Kevin to travel to the Philippines from Los Angeles (and back to the United States). Plaintiffs were to fly from Los Angeles to Manilla and then from Manilla to Dumaguete, and they had made reservations at resorts in the Philippines during their stay. The trip was to commence on June 2020.

34.    On or around March 20, 2020, Plaintiffs purchased online a "Bronze

EVANS LAW FIRM, INC.

Plan" Travel Insurance Policy from Defendants for $316.00 to insure their trip to Philippines. Both Plaintiffs are insured on the policy. The policy provided the pre-departure "Trip Cancellation" benefit, and provided numerous post-departure benefits including Missed Connection, Trip Delay, Baggage Delay, Baggage/Personal Effects, Accidental Death and Dismemberment, Emergency Accident and Emergency Sickness Medical Expense, Emergency Medical Evacuation and Medically Necessary Repatriation, and Repatriation of Remains.

35.     On or around June 7, 2020, Philippine Airlines cancelled the booked flights from Los Angeles to the Philippines due to the COVID-19 pandemic. Plaintiffs consequently cancelled the remainder of their travel.

36.     Plaintiffs submitted a Trip Cancellation claim to Seven Corners in June 2020. In August 2020, Seven Corners denied the claim and in September 2020, also denied Plaintiffs' subsequent appeal, stating, among other things, that the pandemic was not a covered reason for trip cancellation under the policy.

37.     In November 2020, Plaintiffs requested a partial premium refund from Seven Corners, stating in an email, "[w]e are both insureds under the travel plan sold to us by John Hancock Insurance Agency and Starr Indemnity & Liability Company. Even though you have denied our claim for payment due to this cancelled travel two times, we think we are still entitled to a refund for a portion of the premium we paid for benefits that were to take effect during our travel, but never did because the trip was cancelled by Philippine Airlines." *See* Exhibit B.

38.     A representative of Seven Corners responded to this claim, on November 19, 2020, stating: "I reviewed your account and unfortunately there is not a benefit that can provide coverage for a cancellation claim for a trip being cancelled on you due to pandemic. We sincerely apologize we are not able to provide a more favorable response." *See* Exhibit C.

39.     Defendants refused to provide a refund of the premium attributable

to post-departure risks. This was wrong. Because Plaintiffs never commenced their trip, the risks associated with post-departure perils never attached and none of the post-departure coverages were effective.  Thus, there was no consideration for the portion of the premium paid for post-departure benefits. Therefore, Defendants were obligated to return that portion of the gross premium that Plaintiffs paid for benefits exclusively covering post-departure risks.

40.    Defendants' practice of failing to refund any portion of the premiums paid for post-departure benefits is systematic and uniform whenever an insured cancels an insured trip, or a trip is cancelled by the trip provider as occurred here, before he or she embarks on the trip.

## CLASS ALLEGATIONS

41.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

42.    Plaintiffs seek to represent the following class and subclass (collectively "the Class"):

**Nationwide Class**
All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in the United States, or who as residents of the United States, purchased a single-trip Travel Insurance Policy from Defendants that included any coverages applicable exclusively to post-departure risks, canceled their insured trip or their trip was canceled prior to the scheduled departure, and did not receive a refund from Defendants for the insurance premium paid exclusively for post-departure benefit(s).

**California Subclass**
All persons (including natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons) who while in California, or who as residents

EVANS LAW FIRM, INC.

of the California, purchased a single-trip Travel Insurance Policy from Defendants that included any coverages applicable exclusively to post-departure risks, canceled their insured trip or their trip was canceled prior to the scheduled departure, and did not receive a refund from Defendants for the insurance premium paid exclusively for post-departure benefit(s).

43.    Excluded from the Class are Defendants, their employees, officers, directors, legal representatives, heirs, successors and wholly- or partly-owned subsidiaries or affiliates.

44.    The number of persons who are members of the Class is so numerous that joinder of all members in one action is impracticable.  The Class is reasonably estimated to be at least in the hundreds (and likely in the thousands).  While the precise number, names, and addresses of all members of the Class are unknown to Plaintiff, such information is ascertainable from Defendants' records, including the identity of its insureds and the policies and coverages purchased.

45.    The claims of the Class all derive directly from Defendants' single uniform policy of not refunding insurance premiums paid for post-departure benefits, whenever a trip is canceled prior to the scheduled departure.

46.    The objective facts are the same for all Class members: a) each paid a gross premium to Defendants as consideration for a standardized travel insurance plan with pre-bundled coverage options, which included coverage protection exclusively against post-departure travel risks and substantially similar language governing the effective date of such coverages; b) each canceled their insured trip or their trip was canceled prior to the scheduled departure; and, Defendants unconscionably, unjustly, unfairly and unlawfully failed in that precise circumstance to ever return to each and every Class member the *pro rata* portion of the gross premium that was paid for exclusively post-departure benefits (whether or not requested by the Class member).

47.     Defendants did not differentiate, in degree of care or candor, their actions or inactions among individual members of the Class regarding their failure to make *pro rata* refunds of unearned, risk-free premiums for post-departure perils that Defendants never actually insured because the trips were canceled before departure. The objective facts are the same for all members of the Class. Within each Claim for Relief asserted below by the respective Class, the same legal standards govern resolution of the same operative facts existing across all members' individual claims.

48.     Because the claims of each member of each Class have a common origin and share a common basis in terms of Defendants' systematic misconduct and their standardized travel insurance plans, there are common questions of fact and law which exist as to each Class member (in the respective Class) under Federal Rule of Civil Procedure 23(a)(2), and which predominate over any questions affecting only individual members under Federal Rule of Civil Procedure 23(b).

49.     Substantial questions of fact and law that are common to all members of each respective Class, and which control this litigation and predominate over any individual issues, include the following:

a)     Whether Defendants, as a matter of course and policy, retained unearned, risk-free premiums paid exclusively for coverage of post-departure perils, whenever the purchaser of a Travel Insurance Policy canceled his or her travel, or such travel was cancelled, prior to his or her scheduled departure;

b)     Whether by virtue of the trip being cancelled prior to departure, Defendants faced no risk of having to cover post-departure perils and thus retained unearned premium;

c)     Whether by virtue of the of the trip being cancelled prior to departure, Defendants provided no consideration in exchange for the premiums paid exclusively for coverage of post-departure perils;

d)     Whether it would be unjust for Defendants to retain the *pro*

EVANS LAW FIRM, INC.

*rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured's trip is cancelled prior to departure; and

e)  Whether it would be "unfair" or "unlawful" under the California Unfair Competition Law for Defendants to retain the *pro rata* portion of the gross premium paid exclusively for post-departure coverage, when an insured's trip is cancelled prior to departure.

50.  Plaintiffs' claims are typical of the claims of the Class and arise from the Defendants' same course of conduct against the Class as a whole. There are no conflicts between the interests of the named Plaintiffs and the interests of the members of the Class. The relief Plaintiffs seek is typical of the relief sought for the members of the Class.

51.  Plaintiffs will fairly and adequately represent and protect the interests of the Classes because of the common injury and interests of the members of the Class and the singular conduct of Defendants that is, and was, applicable to all members of the Class. Plaintiffs have retained counsel competent and experienced in class action litigation that will adequately represent and protect the interests of the members of the Class.

52.  Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) not only because common questions of fact and law predominate, but also because a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

EVANS LAW FIRM, INC.

53.     Plaintiffs are also not aware of any management difficulties that would preclude maintenance of this litigation as a class action. Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.

## CLAIMS FOR RELIEF

### COUNT ONE
### QUASI-CONTRACT/UNJUST ENRICHMENT/RESTITUTION
(On Behalf of the Nationwide Class and California Subclass)

54.     Plaintiffs repeat and reallege every allegation contained in the Complaint as if fully set forth herein.

55.     Defendants have been unjustly enriched at the expense of Plaintiffs and other members of the Class as a result of Defendants' systematic and willful misconduct.

56.     Plaintiff and other members of the Class have conferred a benefit upon Defendants, in the form of unearned, risk-free premiums, and Defendants have appreciated and knowingly retained that benefit without lawful justification or excuse. Absent this litigation, Defendants will not return the unearned, risk-free premiums which they have deliberately and systematically retained.

57.     Whenever travel is canceled prior to commencement of the insured trip, Defendants' retention of the premiums paid for these post-departure benefits is unjust and inequitable because Defendants never assumed any risk of having to pay post-departure benefits to Plaintiff and other members of the Class. Put simply, no coverage of any post-departure peril is ever transferred to or assumed by Defendants when a trip is cancelled, and thus, such coverage is wholly illusory since the *sine qua non* of post-departure travel insurance (irrespective of the type and level purchased within any particular policy) is *actual travel* on the insured trip.

58.     Never having been placed at risk, Defendants' retention of these

EVANS LAW FIRM, INC.

premiums is also unjust because they have provided no consideration in return for their retention of these premiums.

59.    Further, there is no lawful justification or excuse for Defendants' systematic and willful misconduct. The Travel Insurance Policies executed by and between Plaintiffs and other members of the Class, on the one hand, and Defendants, on the other, nowhere set forth the alleged right of Defendants to withhold refund of any premiums previously paid for post-departure benefits in the event that an insured needs to cancel his or her insured trip.

60.    Because Defendants do not give any consideration for the premiums which are allocable to post-departure benefits, even if any portion of the insurance contract purported to allow retention of premiums paid for exclusively post-departure benefits when an insured does not commence travel, this provision would be void and/or ineffective as a matter of law.

61.    It would be inequitable for Defendants to retain the profits obtained from their wrongful conduct because retaining such profits would come at the expense of Plaintiff and other members of the Class who are entitled to a *pro rata* refund of their gross premium. Plaintiffs and other members of the Class are entitled to restitution and/or disgorgement of all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

## COUNT TWO
### VIOLATION CALIFORNIA'S UNFAIR COMPETITION LAW
### Business &Professions Code §§ 17200 *et seq.*
### Unfair and Unlawful Business Practices
(On behalf of the California Subclass against all Defendants)

62.    Plaintiffs repeat and reallege every allegation contained in the Complaint as if fully set for the herein.

63.    Cal. Bus. & Prof. Code § 17200 *et seq*. prohibits any unlawful, unfair or fraudulent business act or practice.

EVANS LAW FIRM, INC.

64.     Defendants' acts and practices, as alleged herein, are unfair and unlawful business acts and practices under the UCL.

65.     By retaining unearned premiums, Defendants' practices as alleged herein are unconscionable, immoral, deceptive, unfair, illegal, unethical, oppressive, unscrupulous and violate long-standing common law rules against the retention of unearned premiums. The gravity of Defendants' conduct outweighs any benefit of such conduct.

66.     By virtue of Plaintiffs and other members of the California Subclass not having taken their trips (prior to departure), Defendants' consideration (namely, the provision of insurance coverage protecting against post-departure perils) either became entirely void or materially failed before ever being rendered, because Defendants never had to assume the risk of having to cover any of these perils.

67.     Plaintiffs and other members of the California Subclass have suffered monetary injury, including in the form of the unearned premiums retained by Defendants.

68.     By reason of the foregoing, Defendants violated the California UCL by, *inter alia*, retaining, and failing to return the premium paid apportionable to post-departure benefits for travel that did not occur and for which they never had to assume the risk of having to cover any of these perils.

69.     Defendants should be enjoined from their unfair and unlawful refunding practices (and failure to disclose such practices). Plaintiffs and the Class are also entitled to and seek restitution and disgorgement of their money or property that Defendants acquired by means of their unlawful, and unfair competition.

70.     Pursuant to California Code of Civil Procedure Section 1021.5, Plaintiff and the Classes are entitled to recover their attorneys' fees and expenses in connection with Plaintiff's unfair competition claims, the substantial benefit doctrine, and/or the common fund doctrine.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EVANS LAW FIRM, INC.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of himself and all others similarly situated, requests the Court to enter judgment on his behalf and on behalf of the Class as follows:

1. For a temporary, preliminary and/or permanent order for injunctive relief enjoining Defendant from pursuing the practices complained of above;

2. For an order requiring disgorgement and restitution of Defendants' ill-gotten gains and to pay restitution to Plaintiffs, and the proposed Class of all funds acquired by means of any practice declared by this Court to be unjust, unlawful, deceptive or unfair;

3. For restitution, compensatory, special and general damages according to proof and as the Court deems just and proper;

4. Granting certification of the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order distributing any moneys recovered on behalf of the Class, via fluid recovery or cy pres recovery where necessary to prevent Defendants from retaining any of the profits or benefits of their wrongful conduct;

5. For an order awarding pre-judgment interest on the monies wrongfully obtained from the date of collection through the date of entry of judgment in this action;

6. For an order awarding post-judgment interest;

7. For an order awarding attorneys' fees, expenses, and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action including but not limited to attorneys' fees and expenses under the substantial benefit and/or common fund doctrine or other similar principle or doctrine, or in accordance with Cal. Code of Civ. Proc. §§ 1021.5; and,

8. For such other and further relief that is available, and the Court deems just and proper.

# JURY DEMAND

Plaintiff demands a trial by jury on all claims triable as a matter of right.

Dated: June 21, 2021                    Respectfully submitted,


_____
Ingrid M. Evans, #179094
EVANS LAW FIRM, INC.[2]
3053 Fillmore Street, #236
San Francisco, CA 94123
Tel.: (415) 441-8669
Fax: (888) 891-4906
ingrid@evanslaw.com

Sophia Rios (305801)
BERGER MONTAGUE PC
12544 High Bluff Drive, Suite 340
San Diego, CA 92130
Tel: (619) 489-0300
Fax: (215) 875-4604
srios@bm.net

Peter R. Kahana
Y. Michael Twersky
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA  19103
Tel.: (215) 875-3000
Fax: (215) 875-4604
pkahana@bm.net
mitwersky@bm.net

_____

2.  Evans Law Firm, Inc. Los Angeles office address is: 6701 Center Drive West, 14th Floor Los Angeles, CA  90045. As a result of COVID-19, please use the above San Francisco address for all mail.

**CLASS ACTION COMPLAINT - 18**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EVANS LAW FIRM, INC.

John G. Albanese
BERGER MONTAGUE PC
1229 Tyler Street, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-5997
Fax: (612) 584-4470
jalbanese@bm.net

# EXHIBIT A

  

Starr Indemnity & Liability Company, New York, NY is the underwriter/insurer obligated to the insured. This product is distributed by John Hancock Insurance Agency, Inc. which acts only as an agency/distributor and is not the underwriter/insurer obligated to the insured for the benefits provided by this product. John Hancock Insurance Agency, Inc. is a subsidiary of Manulife

**I confirm** that I have read, understood and agree to the Terms & Conditions of this website, the Policy which contains reductions, limitations, **exclusions (See Section VI.)** and termination provisions and the Notice and Consent, including the receipt of electronic notices. Full details of the coverage are contained in the policy.

These plans are underwritten by Starr Indemnity & Liability Company, a Texas domiciled corporation (NAIC Company Code: 38318: TX license number: 93542) with its principal place of business at 399 Park Avenue, 2nd Floor, New York, NY 10022.

Following is LT 007 (06/2015) which contains full details including, reductions, limitations, exclusions, and termination provisions. If there are any conflicts or discrepancies between this document and the policy or if any point is not covered in this document, the terms and conditions of the policy shall govern. Starr Indemnity & Liability Company has sole financial responsibility over any claims and/or any other financial obligations owed by the insurer. Starr Indemnity & Liability Company ("Starr Indemnity"), a Texas company, has administrative offices at 399 Park Avenue, 2nd Floor, NY, NY 10022. Starr Indemnity is currently authorized to transact business in all states and jurisdictions, as well as the District of Columbia and Puerto Rico. NAIC No. 38318. Please read the policy carefully.

Plans are administered by Seven Corners, Inc. (FL license number: L049935) with its principal place of business at 303 Congressional Blvd, Carmel, IN 46032. Seven Corners, Inc. is doing business as Seven Corners, Inc. in California (CA license number: 0E61910). If you have any questions about the plans offered on this website you may contact Seven Corners, Inc. at the following: Toll-free customer hotline: 317.575.2652 or email at: assist@sevencorners.com.

Notice and Consent:

When you click the button on this site to purchase insurance, you are submitting a request for coverage from the insurer. This request for coverage is considered an offer by you to the insurer. The insurer may decline to accept your offer, or your coverage may later be nullified and voided as if it were never in effect, if you fail to meet the terms and conditions of that coverage. This includes, but is not limited to, any circumstance where providing cover, benefit, or services under the policy, or the underlying business or activity, would (1) violate any applicable law or regulation, including without limitation any economic or trade sanction or embargo; or (2) be provided within, or otherwise related to, any country subject to comprehensive economic and/or trade sanction or embargo in the United States.

By submitting this request for coverage, you acknowledge, understand, agree, and certify the following:

1. All information you have provided is accurate to the best of your knowledge and that, by selecting the button to complete your purchase, you are agreeing to pay the amount displayed as the total price with the credit card number provided. You are the owner and rightful user of the credit card used in this transaction. You further acknowledge, understand, and agree that plans purchased with intentionally inaccurate/fraudulent information will be considered void and that you may be subject to legal action as a result of such information.

2. You and all named insureds on your policy are U.S. residents and have obtained, or will have obtained prior to your scheduled departure date, and will maintain throughout your insured trip, all proper documentation, vaccinations, medical equipment/provisions, government licenses/authorizations/permits (including without limitation any required passports, visas, OFAC licensures, etc.), and any other prerequisite to travel that is required or otherwise necessary for your trip. You acknowledge, understand, and agree that your failure to obtain any of the above may result in a denial of coverage and/or assistance services under the plan. Additionally, you acknowledge, understand, and agree that all coverage and assistance services are subject to applicable law.

3. You consent to receiving all communications and notices from us electronically to the email address provided at the time of purchase. You may choose not to receive electronic communications and instead receive communications from us by regular

1

mail at any time. If you do not wish to receive communications electronically, or wish to later update your preference about the receipt of electronic communications, please contact us with your name, policy number, and a statement that "I do not wish to receive electronic communications".

4. You may request paper copies to be sent to you by requesting paper of any information provided to you electronically, or update your electronic contact information at any time by sending a request by email or mail at the above address, or by calling us. Documents sent to you from us will be in either PDF or HTML format. If you are unable to receive PDF or HTML documents, or are otherwise unable to read the documents we send you, please contact us so we can assist you.

FRAUD STATEMENTS

**GENERAL FRAUD STATEMENT**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

**ALABAMA FRAUD STATEMENT**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.
ARKANSAS, LOUISIANA, MARYLAND, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**COLORADO FRAUD STATEMENT**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.
DISTRICT OF COLUMBIA FRAUD STATEMENT

WARNING:
It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.
FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**MAINE, TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.
MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT FRAUD STATEMENT
Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which may be a crime.
**NEW YORK FRAUD STATEMENT**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.
**OKLAHOMA FRAUD STATEMENT**
WARNING:

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**NYS Domestic Violence Statement**
Confidentiality Protocol for Victims of Domestic Violence/Endangered Individuals New York Insurance Law § 2612 provides victims of domestic violence with certain protections including prohibiting an individual, insurer or entity supervised by the New York Department of Financial Services, solely because a person is or has been a victim of domestic violence, from:
1. refusing to issue or renew, deny or cancel any insurance policy or contract;
2. demanding or requiring a greater premium or payment from any person;
3. designating domestic violence as a preexisting condition for which coverage will be denied or reduced; and
4. using as an underwriting criterion the fact that a person is or has been a victim of domestic violence.
New York Insurance Law § 2612 also requires that certain insurers establish procedures to protect and limit access to certain personal information related to a victim of domestic violence.

New York Insurance Law § 2612 provides that, if any person covered by an insurance policy delivers to the insurer a valid court order of protection issued by a court of competent jurisdiction in New York State against the policyholder or other person covered by the policy, then the insurer is prohibited for the duration of the order from disclosing to the policyholder or other person the address and telephone number of the insured, or of any person or entity providing the covered services to the insured. If a child is a covered person, then the right may be asserted by the child's parent or guardian.

New York Insurance Law § 2612 also requires a health insurer, as defined in that section of the law to include an accident and health insurer, to accommodate a reasonable request made by a person covered by an insurance policy to receive communications of claim-related information by alternative means or at alternative locations if the person clearly states that disclosure of the information could endanger the person. If the covered person is a child, then the right may be asserted by the child's parent or guardian. The law further provides that, except with the express consent of the person making the request, a health insurer may not disclose to the policyholder: (1) the address, telephone number, or any other personally identifying information of the person who has made the request or child for whose benefit a request was made; (2) the nature of the health care services provided; or (3) the name or address of the provider of covered services.

**Procedure to Make a Request:**
To submit a valid court order of protection and/or a request to receive communications of claim-related information by alternative means or at alternative locations to the [Add]*, please use the main administrative office address or the email address listed below.
**Main Administrative Office Address:**
Starr Companies
Attention: Confidentiality Requests
399 Park Avenue
2nd Floor
**New York, NY 10022**
**Email: ConfidentialityRequests@Starrcompanies.com**

**Please include:**
1. policy information if available;
2. any alternative address, telephone number or other method of contact; and
3. a valid court order of protection issued by a New York State Court and/or a statement that disclosure of claim-related information could endanger the person seeking confidentiality.
To revoke a request, please also include a sworn statement that confidentiality is no longer necessary.
NYS Domestic and Sexual Violence Hotline:
For further information about domestic violence, you may contact the NYS Domestic and Sexual Violence Hotline by calling 1-800-942-6906.

3




**SCHEDULE OF BENEFITS**

**Bronze Plan**
**We will provide the coverage described in this Policy and listed below.**

| BENEFITS | LIMITS |
|---|---|
| Trip Cancellation | Up to 100% of Trip Cost<br>Maximum Trip Length: 90 Days |
| Trip Interruption | 125% of Trip Cost Limit |
| **Optional:** Trip Cancellation For Any Reason (CFAR) | 75% of Non-Refundable Trip Cost |
| Airline Ticket Change Fee | Minimum delay of 1 hour<br>$200 |
| Single Occupancy Supplement | Included |
| Missed Connection | Minimum of 3 hours delay<br>$200 |
| Trip Delay | Minimum of 6 hours delay<br>$150 per day; Maximum $500 |
| Baggage Delay | Minimum of 12 hours delay<br>Maximum $250<br>Daily Limit of $250 |
| Baggage / Personal Effects | $750<br>Per Article: $250<br>Combined Maximum Limit For Described Property: $750 |
| Pre-Existing Conditions Waiver | Applies |
| | **LT 007 (06/2015) P&C** |

| BENEFITS | LIMITS |
|---|---|
| Accidental Death and Dismemberment | $25,000 |
| Emergency Accident and Emergency Sickness Medical Expense | $50,000<br>Deductible: $0<br>Dental Expense Only: $750<br>Advance Payment to Hospital: $1,000 |
| Emergency Medical Evacuation and Medically Necessary Repatriation | $250,000<br>7 Days Hospitalized |
| Repatriation of Remains | $250,000 |
| Pre-Existing Conditions Waiver | Applies |
| | **LT 007-CA (06/2015) A&H** |

| Endorsements | |
|---|---|
| Frequent Travel Loyalty | $200 |

**OPTIONAL COVERAGES AVAILABLE. IF SELECTED, WILL SHOW ON CONFIRMATION OF BENEFITS**

| | |
|---|---|
| Accidental Death and Dismemberment- Air Only | Principal Sum: $300,000 or $500,000 |
| Renters Collision Insurance | $50,000<br>Deductible: $0.00 |

**STARR INDEMNITY & LIABILITY COMPANY**

**TERRITORY:** This Policy applies to an insured event anywhere in the world unless specifically limited by Us through endorsement or where the Insured or any beneficiary under this Policy is a citizen or instrumentality of the government or any country(ies) against which any laws and/or regulations governing this Policy and/or Us have established any embargo or other form of economic sanction which has the effect of prohibiting Us from providing insurance coverage, transacting business with or otherwise offering economic benefits to the Insured or any other beneficiary under this Policy. No benefits or payments will be made to any beneficiary(ies) who is/are declared unable to receive economic benefits under the laws and/or regulations governing this Policy and/or Us.

**STARR**
**INDEMNITY & LIABILITY**

**Dallas, Texas**
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

## TRAVEL INSURANCE POLICY

### Bronze Plan

This Policy is issued in consideration of enrollment and payment of the premium due. This Policy describes all of the travel insurance benefits underwritten by Starr Indemnity & Liability Company, herein referred to as We, Us, and Our. This Policy is a legal contract between You (herein referred to as You or Your) and Us. It is important that You read Your Policy carefully. Insurance benefits vary from program to program. Please refer to the Schedule of Benefits. It provides You with specific information about the program You purchased.

## FOURTEEN DAY FREE LOOK

You may cancel insurance under the Policy by giving Our Administrator or Us written notice of cancellation on the earlier of: (a) 14 days from the date Your Policy is purchased; or (b) prior to Your Scheduled Departure Date. If You do this, We will refund Your premium paid provided You have not filed a claim under the Policy.

## TABLE OF CONTENTS

**SECTION I - GENERAL DEFINITIONS**
**SECTION II - GENERAL PROVISIONS**
**SECTION III - ELIGIBILITY AND PERIOD OF COVERAGE**
**SECTION IV - COVERAGES**
**SECTION V - CLAIMS PROCEDURES AND PAYMENT**
**SECTION VI - GENERAL LIMITATIONS AND EXCLUSIONS**

## SECTION I. GENERAL DEFINITIONS

**"Accident"** means a sudden, unexpected, unusual, specific event that occurs at an identifiable time and place during the Covered Trip and also includes a mishap to a conveyance in which You are traveling.

**"Accidental Injury"** means bodily injury caused by an Accident, directly and independently of all other causes and sustained on or after the Effective Date of this coverage and on or before the Scheduled Return Date. Benefits for Accidental Injury will not be paid for any loss caused by sickness or other bodily diseases or infirmity.

**"Actual Cash Value"** means purchase price less depreciation.

**"Assistance Company"** means the service provider with whom We have contracted to coordinate and deliver emergency travel assistance, medical evacuation and repatriation.

**"Baggage"** means luggage and personal effects and possessions whether owned, borrowed or rented, and taken by You on the Covered Trip.

**"Bankruptcy"** means the filing of a petition for voluntary or involuntary Bankruptcy in a court of competent jurisdiction under Chapter 7 or Chapter 11 of the United States Bankruptcy Code 11 U.S.C. Subsection 101 et seq.

**"Business Equipment"** means property that is used in trade, business or for the production of income; or property or components of goods that are offered for sale or trade.

**"Business Partner"** means an individual who: (a) is involved in a legal partnership; and (b) is actively involved in the day to day management of the business.

**"Checked Baggage"** means a piece of Baggage for which a claim check has been issued to You by a Common Carrier.

**"City"** means an incorporated municipality having defined borders and does not include the high seas, uninhabited areas or airspace.

**STARR INDEMNITY & LIABILITY COMPANY**

**"Common Carrier"** means any regularly scheduled land, sea, and/or air conveyance operating under a valid license for the transportation of passengers for hire.

**"Complications of Pregnancy"** means a condition that is distinct from pregnancy but is adversely affected or caused by pregnancy.

**"Covered Sickness"** means an illness or disease that is diagnosed or treated by a Physician on or after the Effective Date of insurance and while You are covered under the Policy in accordance with the terms and provisions of this Policy.

**"Covered Trip"** means a trip taken during the Policy period for which You request insurance coverage and pay the required premium, where:
(a)  you travel more than 100 miles from Your home to a destination outside Your City of residence;
(b)  the purpose of the trip is business or pleasure; and
(c)  the trip has defined departure and return dates.

**"Deductible"** means the dollar amount You must contribute to the loss.

**"Default"** means a material failure or inability to provide contracted services due to financial insolvency.

**"Dependent Child(ren)"** means Your child(ren), including an unmarried child, stepchild, legally adopted child or foster child who is: (a) less than age 19 or at least age 19 but less than age 23 and regularly attends an accredited school or college; and (b) who is primarily dependent on You for support and maintenance.

**"Domestic Partner"** means a person, at least 18 years of age, with whom You have been living in a spousal relationship with evidence of cohabitation for at least 6 continuous months prior to the Effective Date of coverage.

**"Economy Fare"** means the lowest published rate for an economy ticket.

**"Effective Date"** means the date and time Your coverage begins, as outlined in Section III. Eligibility and Period of Coverage of the Policy.

**"Emergency Treatment"** means necessary medical treatment, including services and supplies that must be performed during the Covered Trip due to the serious and acute nature of the Accidental Injury or Covered Sickness.

**"Family Member"** means You or Your Traveling Companion's legal or common law spouse, Domestic Partner, Your or Your spouse's or Domestic Partner's caregiver, parent, legal guardian, step-parent, grandparent, parents-in-law, grandchild, natural or adopted child, foster child, ward, step-child, children-in-law, brother, sister, step-brother, step-sister, brother-in-law, sister-in-law, aunt, uncle, niece or nephew.

**"Hospital"** means a facility that:
(a)  holds a valid license if it is required by the law;
(b)  operates primarily for the care and treatment of sick or injured persons as in-patients;
(c)  has a staff of 1 or more Physicians available at all times;
(d)  provides 24 hour nursing service and has at least 1 registered professional nurse on duty or call;
(e)  has organized diagnostic and surgical facilities, either on the premises or in facilities available to the Hospital on a pre-arranged basis;
(f)  is not primarily a nursing care facility, rest home, convalescent home or similar establishment or any separate ward, wing or section of a Hospital used as such; and
(g)  is not a treatment or rehabilitation facility for drug addiction or alcohol abuse.

**"Hotel"** means a licensed establishment that provides short term lodging for the general public.

**"Inclement Weather"** means any severe weather condition that delays the scheduled arrival or departure of a Common Carrier.

**"Insured"** means a person who has enrolled for insurance under this Policy.

**"Land/Sea Arrangements"** means Your land and/or sea arrangements booked through the Travel Supplier for your Covered Trip.

**"Medically Necessary"** means that a treatment, service or supply is: (a) essential for diagnosis, treatment or care of the Accidental Injury or Covered Sickness for which it is prescribed or performed; (b) meets generally accepted standards of medical practice; and (c) is ordered by a Physician and performed under his or her care, supervision or order.

**"Natural Disaster"** means flood, fire, hurricane, tornado, earthquake, tsunami, volcanic eruption, blizzard or avalanche that is due to natural causes.

**"Payments or Deposits"** means the cash, check or credit card amounts actually paid for Your Covered Trip.  Payments or Deposits do not include certificates, vouchers, frequent traveler rewards, miles or points, discounts and/or credits applied (in part or in full) towards the cost of Your Covered Trip.

**STARR INDEMNITY & LIABILITY COMPANY**

**"Physician"** means a licensed health care provider of medical, surgical or dental services acting within the scope of his or her license and rendering care or treatment to You that is appropriate for Your medical condition(s) and locality where the services are provided. The treating Physician may not be You, a Traveling Companion or a Family Member.

**"Policy"** means this individual Policy document, the Schedule of Benefits, and any endorsements, riders or amendments that will attach during the period of coverage.

**"Pre-Existing Condition"** means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 60 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 60 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

**"Scheduled Departure Date"** means the date on which You are originally scheduled to leave on the Covered Trip.

**"Scheduled Return Date"** means the date on which You are originally scheduled to return to the point of origin or to a different final destination or to Your primary residence from a Covered Trip.

**"Strike"** means a stoppage of work: (a) announced, organized and sanctioned by a labor union; and (b) that interferes with the normal departure and arrival of a Common Carrier.  "Strike" specifically includes work slowdowns and sickouts.

**"Terrorist Attack"** means any act or acts that are certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism.

**"Transportation"** means any land, sea or air conveyance required to transport You during an Emergency Medical Evacuation. Transportation includes, but is not limited to, Common Carrier, air ambulances, land ambulances and private motor vehicles.

**"Traveling Companion"** means person(s) booked to accompany You on Your Covered Trip. "Traveling Companion" does not include a group or tour leader unless You are sharing room accommodations with the group or tour leader.

**"Travel Supplier"** means any entity that provides travel services or travel arrangements.

**"Unforeseen"** means not anticipated or expected.

**"We, Us, Our"** means Starr Indemnity & Liability Company and its agents.

**"You" and "Your"** means the Insured.

## SECTION II. GENERAL PROVISIONS

The following provisions apply to all coverages:

**SUIT AGAINST US:** No legal action related to a claim can be brought against Us until 60 days after We receive Proof of Loss. No legal action related to a claim can be brought against Us unless there has been full compliance with all of the terms of this Policy and no more than 2 years after the time required for giving Proof of Loss.

**MISREPRESENTATION AND FRAUD:** Your coverage shall be void if, whether before or after a loss, You have concealed or misrepresented any material fact or circumstance concerning the Policy, the subject thereof or Your interest therein or if You commit fraud or material misrepresentations in connection with this insurance coverage.

**SUBROGATION:** To the extent We pay for a loss suffered by You, We will take over the rights and remedies You had relating to the loss. You must help Us to preserve Our rights against those responsible for the loss. This may involve signing any papers and taking any other steps We may reasonably require. If We take over Your rights, You (or Your designated representative if a minor) must sign an appropriate subrogation form supplied by Us. Failure to comply with this provision could void or limit coverage. We will not retain any payments until You have been made whole with regard to any claim payable under the Policy.

**CONTROLLING LAW:** Any part of the Policy that conflicts with the state law where the Policy is issued is changed to meet the minimum requirements of that law.

**PREMIUM:** The required premium must be paid to Us, Our agent or to the Travel Supplier prior to the Scheduled Departure Date of the Covered Trip.

**STARR INDEMNITY & LIABILITY COMPANY**

**INSURANCE WITH OTHER INSURERS:** If there is other valid coverage, not with Us, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which We have not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this Policy shall be limited to such proportion of the loss as the amount that would otherwise have been payable hereunder plus the total of the like amounts under all such other valid coverages for the same loss for which We had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall exceed the pro-rata portion for the amount so determined. For the purpose of applying this provision when other coverage is on a provision of service basis, the "like amount" of such other coverage shall be taken as the amount that the services rendered would have cost in the absence of such coverage.

**ENTIRE CONTRACT:** This Policy, Your application or enrollment material, and any attachments represent the entire contract between You and Us.

## SECTION III. ELIGIBILITY AND PERIOD OF COVERAGE

**ELIGIBILITY:** Each Insured must enroll for his or her own insurance and pay any premium due. If a minor Dependent Child is traveling with a parent, the parent must enroll himself/herself for insurance and also enroll the child for his or her own insurance and pay any premium due. If accepted by Us, each person will become an Insured.

**EFFECTIVE DATE AND POLICY TERM:** The Effective Date of Your Policy is shown in the confirmation of benefits.

**When Your Coverage for Benefits Begins:**
Subject to payment of any premium due:
(a) For Trip Cancellation: Coverage begins at 12:01 A.M. local time, at Your location on the day after the required premium for such coverage is received by Us or Our administrator as shown in the confirmation of benefits. Coverage ends at the point and time of departure on Your Scheduled Departure Date.
(b) For Trip Delay: Coverage is in force while en route to the Covered Trip from Your home and also while en route from the Covered Trip to Your home.
(c) For all other coverages: Coverage begins at the later of the time of Your departure on the Scheduled Departure Date; or Your actual departure for Your Covered Trip.

**When Your Coverage Ends:**
Coverage is effective for the stated term shown in the confirmation of benefits. In addition, Your coverage will end at 11:59 P.M. local time on the earliest of the following dates:
(a) the date You cancel Your Covered Trip;
(b) the Scheduled Return Date as stated on the travel tickets;
(c) the date You return to Your origination point if prior to the Scheduled Return Date; or
(d) the date You leave or change Your Covered Trip (unless due to Unforeseen and unavoidable circumstances covered by the Policy).

If You extend the return date, coverage will terminate at 11:59 P.M., local time, at Your location on the Scheduled Return Date.

**EXTENDED COVERAGE:**
All coverage under the Policy except Trip Cancellation will be extended if:
(a) Your entire Covered Trip is covered by the Policy; and
(b) Your return is delayed by an Unforeseen Event specified under Trip Cancellation, Trip Interruption or Trip Delay.

If coverage is extended for the above referenced reasons, coverage will end on the earliest of: (a) the date You reach Your return destination; or (b) 7 days after the date the Covered Trip was scheduled to be completed.

**STARR INDEMNITY & LIABILITY COMPANY**

## SECTION IV. COVERAGES

**We will provide the coverage described in this policy only if it is listed on the Schedule of Benefits.**

### TRIP CANCELLATION/TRIP INTERRUPTION

**TRIP CANCELLATION**
We will pay a benefit, up to the maximum shown on the Schedule of Benefits, if You are prevented from taking Your Covered Trip due to any of the Unforeseen Events listed below occurring on or after the Effective Date of the Policy. Maximum trip length is also shown on the Schedule of Benefits.

We will pay You for the following:
(a) The amount of forfeited, non-refundable, and unused Payments or Deposits; or
(b) Additional cost incurred if the Travel Supplier cancels Your Covered Trip due to an Unforeseen Event and You elect to utilize the service of a replacement Travel Supplier.

In no event shall the amount We pay exceed the lesser of the amount You prepaid for the Covered Trip or the maximum benefit shown on the Schedule of Benefits.

**Single Occupancy:** We will pay You, up to the maximum shown on the Schedule of Benefits, for the additional cost incurred during the Covered Trip as a result of a change in the per person occupancy rate for prepaid travel arrangements if a person booked to share accommodations with You has his or her Covered Trip delayed, canceled or interrupted due to an Unforeseen Event occurring on or after the Effective Date of the Policy and You do not cancel Your Covered Trip.

**Special Conditions:** You must advise the Travel Supplier and Us as soon as reasonably possible in the event of a claim. We will not pay benefits for any additional charges incurred that would not have been charged had You notified the Travel Supplier and Us as soon as reasonably possible.

**TRIP INTERRUPTION**
We will pay a benefit, up to the maximum shown on the Schedule of Benefits, if You are prevented from continuing or resuming Your Covered Trip due to any of the Unforeseen Events listed below occurring on or after the Effective Date of the Policy.

We will pay You:
(a) for the unused, non-refundable travel arrangements prepaid to the Travel Supplier(s);
(b) additional transportation expenses incurred by You; or
(c) return air travel up to the lesser of the cost of an economy flight or the amount shown on the Schedule of Benefits.

In no event shall the amount We pay exceed the lesser of the amount You prepaid for the Covered Trip or the maximum benefit shown on the Schedule of Benefits.

**The Following are the Unforeseen Events for Trip Cancellation and Trip Interruption:**

(a) Your Accidental Injury, Covered Sickness or death or the Accidental Injury, Covered Sickness or death of Your Traveling Companion, Your Family Member, Your children's caregiver or Your Business Partner; that results in medically imposed restrictions as certified by a Physician at the time of loss preventing Your participation or continued participation in the Covered Trip. A Physician must advise cancellation of the Covered Trip on or before the Scheduled Departure Date.
(b) An Accidental Injury incurred by You that causes You to be medically unable to continue Your trip's activity(ies). An actual examination by a Physician must take place and the Physician must advise You to discontinue the trip's activity(ies).

**STARR INDEMNITY & LIABILITY COMPANY**

(c) Inclement weather, Natural Disasters, Terrorist Attacks or mechanical breakdown of the Common Carrier that results in the complete cessation of travel services at the point of departure or destination for at least 48 consecutive hours.

(d) Mandatory evacuation ordered by local authorities at Your destination due to a Natural Disaster. You must have 50% or less of Your Trip remaining at the time the mandatory evacuation ends, in order for this benefit to be payable.

(e) Natural Disaster or documented man-made disaster at the point of departure or Your destination that renders Your primary residence or the accommodations at Your destination uninhabitable.

(f) Adverse weather or Natural Disaster resulting in the obstruction of public roadways or curtailment of public transportation, that prevents Your ability to arrive at Your Land/Sea Arrangements.

(g) A road closure causing a delay in reaching Your destination for at least 12 hours.

(h) Strike that causes complete cessation of travel services of Your Common Carrier for at least 48 consecutive hours.

(i) Bankruptcy and/or Default of Your Travel Supplier that occurs more than 14 days following the Effective Date. Your Scheduled Departure Date must be no more than 12 months beyond the Effective Date. Benefits will be paid due to Bankruptcy or Default of an airline only if no alternate transportation is available. If alternate transportation is available, benefits will be limited to the change fee charged to allow You to transfer to another airline in order to get to Your intended destination. This coverage only applies if the Policy was purchased within 14 calendar days of the initial Trip payment.

(j) The airport terminal from which You are scheduled to fly, is closed due to a documented security breach within 12 hours of arrival at the terminal or while You are physically at the terminal.

(k) A politically motivated Terrorist Attack that occurs within 30 days of Your departure and within 50 miles of a City listed on Your itinerary. The Terrorist Attack must occur on or after the Effective Date of Your Trip Cancellation Coverage.

(l) A documented theft of passports or visas. Documented means that You have reported the theft to the local authorities.

(m) You or Your Traveling Companion being directly involved in or delayed due to a traffic Accident substantiated by a police report, while en route to departure.

(n) You and/or Your Traveling Companion are hijacked, quarantined, required to serve on a jury, subpoenaed, required to appear as a witness in a legal action, provided You or Your Traveling Companion are not a party to the legal action or appearing as a law enforcement officer; the victim of felonious assault; having Your principal place of residence made inaccessible and uninhabitable by a Natural Disaster; or burglary or vandalism of Your principal place of residence within 10 days of departure.

(o) You or Your Traveling Companion are called to active military duty after the Effective Date.

(p) You have, or Your Traveling Companion has, a previously approved military leave revoked or experience a military reassignment.

(q) Your transfer, within thirty (30) days of the date of Your Covered Trip, by the employer with which You are employed on the Effective Date that requires relocation of Your principal residence.

(r) Your Traveling Companion's transfer, within thirty (30) days of the date of Your Covered Trip, by the employer with which Your Traveling Companion is employed on the Effective Date that requires relocation of Your Traveling Companion's principal residence.

(s) After at least three (3) years of full time continuous employment at the same company, You are terminated or laid-off from full time employment at such company within thirty (30) days of the date of Your Covered Trip.

(t) After at least three (3) years of full time continuous employment at the same company, Your Traveling Companion is terminated or laid-off from full time employment at such company within thirty (30) days of the date of Your Covered Trip.

### TRIP CANCELLATION FOR ANY REASON
**This coverage is Optional and must be indicated as applicable on Your Schedule of Benefits.**

If You are prevented from taking the Covered Trip for any reason not otherwise excluded, We will reimburse You or Your designated representative for 75% of the prepaid, forfeited, non-refundable Payments or Deposits for the Covered Trip arrangement(s), provided the following conditions are met:

(a) this coverage is purchased within 14 days of the date the initial Payment or Deposit is paid and You insure the cost of any subsequent arrangement(s) added to the same Covered Trip within 14 days of the date of Payment or Deposit for any such subsequent Covered Trip arrangement(s); and

(b) this insurance coverage is purchased for the full cost of all non-refundable prepaid Covered Trip arrangements; and
(c) You or Your designated representative cancels the Covered Trip no less than 2 days prior to the Scheduled Departure Date.
This coverage will be terminated, no benefits will be paid and any premium paid for this coverage will be refunded if the full costs of all prepaid, non-refundable Covered Trip arrangements are not insured..

## AIRLINE TICKET CHANGE FEE

We will pay the amount shown on the Schedule of Benefits if You have to change the dates of Your airline ticket for the following reasons and the airline charges You a penalty or change fee:
(a) Any Unforeseen Event occurring on or after the Effective Date of the Policy listed under the Trip Cancellation and Trip Interruption benefits;
(b) You or Your Traveling Companion are delayed by Inclement Weather while en route to a departure provided You or Your Traveling Companion were scheduled to arrive at the point of departure at least 1 hour before the scheduled time of departure; or
(c) Your medical emergency or that of a Traveling Companion or a Family Member. The medical emergency requires a documented examination by a Physician.

## MISSED CONNECTION

We will pay the benefit shown on the Schedule of Benefits if You missed a connecting flight during Your Covered Trip due to cancellation or delay for at least the number of hours shown on the Schedule of Benefits of all regularly scheduled airline flights due to Inclement Weather or any delay caused by a Common Carrier. Benefits of up to the amount shown on the Schedule of Benefits are provided to cover:
(a) additional transportation expenses needed for You to join the departed Covered Trip;
(b) reasonable accommodations and meal expenses; and
(c) non-refundable Covered Trip payments for the unused portion of Your Covered Trip.

Coverage is secondary to any compensation provided by a Common Carrier. Coverage will not be provided to You if You are able to meet Your scheduled connection departure but cancel Your Covered Trip due to Inclement Weather.

## TRIP DELAY

We will pay Your additional expenses on a one-time basis, up to the maximum shown on the Schedule of Benefits, if You are delayed en route to or from the Covered Trip for at least the number of hours shown on the Schedule of Benefits due to an Unforeseen Event For the Trip Cancellation and Trip Interruption benefits occurring on or after the Effective Date of the Policy.

Additional Expenses include:
(a) any prepaid, unused, non-refundable land, air or water accommodations;
(b) any reasonable additional expenses incurred (meals, accommodations, local transportation, and telephone calls);
(c) an Economy Fare from the point where You interrupted Your Covered Trip to a destination where You can resume Your Covered Trip; or
(d) a one-way Economy Fare to return You to Your originally scheduled return destination.

## BAGGAGE DELAY

We will pay You for the expense of replacing necessary personal effects, up to the maximum shown on the Schedule of Benefits, if Your Checked Baggage is delayed or misdirected by a Common Carrier for at least the number of hours shown on the Schedule of Benefits, while on a Covered Trip, except for return travel to Your primary residence.

This coverage is conditioned on You being a ticketed passenger on a Common Carrier. All claims must be verified by the Common Carrier who must certify the delay or misdirection. Receipts for the purchase or replacement of necessary personal effects must accompany any claim.

## BAGGAGE/PERSONAL EFFECTS

We will pay You up to the maximum shown on the Schedule of Benefits, for loss, theft or damage to Baggage and personal effects, provided that You, Your Traveling Companion or Your Family Member has taken all reasonable measures to protect, save and/or recover the property at all times. The Baggage and personal effects must be owned by and accompany You during the Covered Trip. Original receipts and a police report from the local jurisdiction (in the event of theft) must be provided for reimbursement. You have checked Your Baggage with a Common Carrier and delivery is delayed, coverage for Baggage will be extended until the Common Carrier delivers the property.

There is a per article limit shown on the Schedule of Benefits. There is a combined maximum limit shown on the Schedule of Benefits for the following: jewelry, watches, articles consisting in whole or in part of silver, gold or platinum, furs, articles trimmed with or made mostly of fur, sports equipment, radios, cameras, camcorders and their accessories and related equipment and other electronic items.

We will pay You for fees associated with the replacement of Your passport during Your Covered Trip. Receipts are required for reimbursement.

We will also reimburse You for charges and interest incurred due to unauthorized use of Your credit cards if such use occurs during Your Trip and provided that You have complied with all credit card conditions imposed by the credit card companies.

We will pay the lesser of the following:
(a) Actual Cash Value, as determined by Us, at time of loss, theft or damage to Baggage and personal effects; or
(b) the cost of repair or replacement.

## SECTION V. CLAIMS PROCEDURES AND PAYMENT

All benefits will be paid in United States dollars. The following provisions apply to all benefits.

**PAYMENT OF CLAIMS:** We or Our authorized designee will pay a claim after receipt of acceptable written Proof of Loss.

All claims will be paid to You. All or a portion of all other benefits provided may, at Our option, be paid directly to the provider of the service(s). All benefits not paid to the provider will be paid to You. In the event You are a minor, incompetent or otherwise unable to give a valid release for the claim, We may make arrangements to pay claims to Your legal guardian, committee or other qualified representative. Any payment made in good faith will discharge Our liability to the extent of the claim.

The applicable benefit amount will be reduced by the amount of benefits, if any, previously paid by other insurance policies for the same loss.

**NOTICE OF CLAIM:** Written notice of claim must be given by the claimant (either You or someone acting for You) to Us or Our authorized designee within 20 days after a covered loss first begins or as soon as reasonably possible. Notice must include Your name, the Travel Supplier's name and the Policy number. Notice must be sent to Our administrative office, at the following address: 399 Park Avenue, 8th Floor, New York, NY 10022 or to Our authorized designee.

**CLAIM FORMS:** When We receive a notice of claim, We will send You the forms to be used in filing proof of claim. If We or Our designee do not send You these forms within 15 days, You can meet the Proof of Loss requirement by sending Us

**STARR INDEMNITY & LIABILITY COMPANY**

or Our designee a written statement of the occurrence, nature and extent of the loss within the time allowed for filing Proof of Loss under this Policy.

**PROOF OF LOSS:** The claimant (either You or someone acting for You) must send Us or Our authorized designee Proof of Loss within 90 days after a covered loss occurs or as soon as reasonably possible. This must be a detailed, written statement.

**OTHER INSURANCE WITH US:** You may be covered under only 1 travel Policy with Us for each Covered Trip. If You are covered under more than 1 such Policy, You may select the coverage that is to remain in effect. In the event of death, the selection will be made by the beneficiary or estate. Premiums paid (less claims paid) will be refunded for the duplicate coverage that does not remain in effect.

**PHYSICAL EXAMINATION AND AUTOPSY:** We have the right to physically examine the Insured as often as is reasonably necessary while a claim is pending. We may choose the Physician. We also have the right to request an autopsy in the case of death, unless the law forbids it. We will pay the cost of the examination or autopsy.

The following provisions apply to Baggage Delay and Baggage / Personal Effects Coverage:

**NOTICE OF LOSS**: If Your covered property is lost, stolen or damaged, You must:
(a) notify Us, or Our administrator as soon as possible;
(b) take immediate steps to protect, save and/or recover the covered property;
(c) give immediate written notice to the Common Carrier or bailee who is or may be liable for the loss or damage; and
(d) notify the police or other authority within 24 hours in the event of robbery or theft and provide us with a copy of any police report.

**SETTLEMENT OF LOSS:** Claims for damage and/or destruction shall be paid after acceptable proof of the damage and/or destruction is presented to Us and We have determined that the claim is covered. Claims for lost property will be paid after the lapse of a reasonable time if the property has not been recovered. You must present acceptable Proof of Loss and the value involved to Us.

**DISAGREEMENT OVER AMOUNT OF LOSS:** If there is a disagreement about the amount of the loss either You or We can make a written demand for an appraisal. After the demand, You and We will each select Our own competent appraiser. After examining the facts, each of the two appraisers will give an opinion on the amount of the loss. If they do not agree, they will select an arbitrator. Any figure agreed to by two of the three (the appraisers and the arbitrator) will be binding. You will pay the appraiser that You select. We will pay the appraiser We choose. You will share equally with Us the cost for the arbitrator and the appraisal process.

## SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS

**Coverages to which General Exclusions apply:** The following exclusions apply to Trip Cancellation, Trip Interruption, Airline Ticket Change Fee, Missed Connection and Trip Delay.

We will not pay for loss caused by or resulting from:

1. Pre-Existing Conditions, unless the Policy is purchased within 14 days of Your initial trip deposit. The policy for the Covered Trip must be the first and only policy issued for this travel period and destination and You must be medically able to travel at the time You purchase coverage;
2. Commission or the attempt to commit a criminal act by You, Your Traveling Companion or Your Family Member, whether insured or not;
3. Dental treatment except as a result of an Accidental Injury to sound natural teeth or emergency dental treatment for relief of pain;

**STARR INDEMNITY & LIABILITY COMPANY**

4. Claims resulting from expenses incurred and as a result of being intoxicated above the legal limit or under the influence of drugs or narcotics, unless prescribed by a Physician and taken in accordance with the Physician's recommendations;
5. Mental or emotional disorders, unless hospitalized as a result thereof;
6. Any non-Emergency Treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
7. Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;
8. Serving as a contractor for the military, participation in any military maneuver or training exercise, police service or military service;
9. Participation as a professional athlete, participation in non-professional, organized amateur or interscholastic athletics or sports competitions or events;
10. Piloting or learning to pilot or acting as a member of the crew of any aircraft;
11. Pregnancy and childbirth of the Insured or Traveling Companion other than Unforeseen Complications of Pregnancy if hospitalized during a Covered Trip;
12. Cosmetic surgery (except that cosmetic surgery shall not include reconstructive surgery when such service is incidental to or follows surgery resulting from trauma, infection, or other diseases of the involved part) and reconstructive surgery because of congenital disease or anomaly of a covered Dependent Child which has resulted in a functional defect;
13. Suicide, attempted suicide or any intentionally self-inflicted injury while sane or insane (in Colorado and Missouri, sane only) committed by You, Your Traveling Companion or Your Family Member, whether or not insured;
14. Traveling for the purpose of securing medical treatment;
15. War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not) or civil war;
16. Your participation in civil disorder, riot or a felony;
17. Accidental Injury or Covered Sickness when traveling against the advice of a Physician;
18. Care or treatment that is not Medically Necessary;
19. Services not shown as covered; and expenses not approved by Our designated Assistance Company in advance;
20. Care or treatment for which compensation is payable under Worker's Compensation Law, any Occupational Disease Law; the 4800 Time Benefit plan or similar legislation; or
21. Directly or indirectly, the actual, alleged or threatened discharge, dispersal, seepage, migration, escape, release or exposure to any hazardous biological, chemical, nuclear radioactive material, gas, matter or contamination.

The following exclusions apply to Baggage Delay and Baggage/Personal Effects Only:

We will not provide benefits for any loss or damage to:
1. animals;
2. automobiles and automobile equipment;
3. boats or other vehicles or conveyances;
4. trailers;
5. motors;
6. motorcycles;
7. aircraft;
8. bicycles (except when checked as Baggage with a Common Carrier);
9. eyeglasses, sunglasses or contact lenses;
10. artificial teeth and dental bridges;
11. hearing aids;
12. prosthetic limbs;
13. keys, money, stamps, securities and documents;
14. tickets for entertainment events or other source of leisure activities;
15. art objects and musical instruments;
16. consumables including medicines, perfumes, cosmetics, and perishables;
17. professional or occupational equipment or property, whether or not electronic Business Equipment;

**STARR INDEMNITY & LIABILITY COMPANY**

18. telephones, computer hardware or software; or
19. property illegally acquired, kept, stored or transported.

The following exclusions apply to Baggage Delay and Baggage/Personal Effects only:

Any loss caused by or resulting from the following is excluded:
1.  wear and tear or gradual deterioration;
2.  breakage of brittle or fragile articles;
3.  insects or vermin;
4.  inherent vice or damage while the article is actually being worked upon or processed;
5.  confiscation or expropriation by order of any government;
6.  radioactive contamination;
7.  war or any act of war whether declared or not;
8.  property shipped as freight or shipped prior to the Scheduled Departure Date;
9.  delay or loss of market value;
10. indirect or consequential loss or damage of any kind;
11. theft or pilferage while left unattended in any vehicle if the vehicle is not property secured;
12. electrical current including electric arcing that damages or destroys electrical devices or appliances; or
13. mysterious disappearance.

---

In Witness Whereof, We have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by Our duly authorized representative.

Nehemiah E. Ginsburg,
General Counsel and Secretary

Steve Blakey,
President and Chief Executive Officer

**STARR INDEMNITY & LIABILTY COMPANY**

**FREQUENT TRAVEL LOYALTY**
**ENDORSEMENT**

The Policy to which this endorsement is attached is amended as follows.

The following is added to **SECTION IV. COVERAGES:**

**FREQUENT TRAVEL LOYALTY**

We will pay You, up to the maximum shown on the Schedule of Benefits, if You used frequent traveler awards (frequent flyers miles or hotel rewards) for any part of a Covered Trip, for the fees incurred by You for re-depositing those awards in Your account if the Covered Trip is canceled due to any of the Unforeseen Events under Trip Cancellation and Interruption Coverage.

**SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS** is amended as follows:

In addition to the exclusions in the Policy, the following exclusions apply to Frequent Travel Loyalty coverage:

1. Pre-Existing Conditions, to the extent they are excluded in Your base Policy;
2. Commission or the attempt to commit a criminal act by You, Your Traveling Companion or Your Family Member, whether insured or not;
3. Dental treatment except as a result of an Accidental Injury to sound natural teeth or emergency dental treatment for relief of pain;
4. Claims resulting from expenses incurred and as a result of being intoxicated above the legal limit or under the influence of drugs or narcotics, unless prescribed by a Physician and taken in accordance with the Physician's recommendations;
5. Mental or emotional disorders, unless hospitalized as a result thereof;
6. Any non-Emergency Treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
7. Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;
8. Serving as a contractor for the military, participation in any military maneuver or training exercise, police service or military service;
9. Participation as a professional athlete; participation in non-professional, organized amateur or interscholastic athletics or sports competitions or events;
10. Piloting or learning to pilot or acting as a member of the crew of any aircraft;
11. Pregnancy and childbirth of the Insured or Traveling Companion other than Unforeseen Complications of Pregnancy if hospitalized during a Covered Trip;
12. Cosmetic surgery (except  that cosmetic surgery shall not include reconstructive surgery when such service is incidental to or follows surgery resulting from trauma, infection, or other diseases of the involved part) and reconstructive surgery because of congenital disease or anomaly of a covered Dependent Child which has resulted in a functional defect;
13. Suicide, attempted suicide or any intentionally self-inflicted injury while sane or insane (in Colorado and Missouri, sane only) committed by You, Your Traveling Companion or Your Family Member, whether or not insured;
14. Traveling for the purpose of securing medical treatment;
15. War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not) or civil war;
16. Your participation in civil disorder, riot or a felony;
17. Accidental Injury or Covered Sickness when traveling against the advice of a Physician;
18. Care or treatment that is not Medically Necessary;
19. Services not shown as covered; and expenses not approved by Our designated Assistance Company in advance;

**STARR INDEMNITY & LIABILITY COMPANY**

20. Care or treatment for which compensation is payable under Worker's Compensation Law, any Occupational Disease Law; the 4800 Time Benefit plan or similar legislation; or

21. Directly or indirectly, the actual, alleged or threatened discharge, dispersal, seepage, migration, escape, release or exposure to any hazardous biological, chemical, nuclear radioactive material, gas, matter or contamination.

There are no other changes to the Policy.

**STARR INDEMNITY & LIABILITY COMPANY**

### RENTERS COLLISION INSURANCE ENDORSEMENT

The Policy to which this endorsement is attached is amended as follows.

The following is added to **SECTION I. GENERAL DEFINITIONS:**

In addition to the definitions in the Policy, the following definitions apply to Renters Collision coverage:

**"Deductible"** means the dollar amount You must contribute to the loss.

"**Exotic Vehicles**" means antique cars that are over 20 years old or have not been manufactured for 10 or more years or any vehicle with an original manufacturer's suggested retail price greater than $50,000.

**The following is added to SECTION IV. COVERAGES:**

### RENTERS COLLISION INSURANCE

If You rent a car while on the Covered Trip, and the car, while in Your possession, is damaged due to collision, theft, vandalism, windstorm, fire, hail, flood or any cause not within Your control, We will pay the lesser of:
(a) The cost of repairs and rental charges imposed by the rental company while the car is being repaired; or
(b) The Actual Cash Value of the car, meaning purchase price less depreciation; or
(c) The amount shown on the Schedule of Benefits

Coverage is provided to You and Your Traveling Companions, provided You and Your Traveling Companions are licensed drivers, and are listed on the rental agreement.

You must perform the following duties in the event of loss:
(a) Take all reasonable, necessary steps to protect the vehicle and prevent further damage to it;
(b) Report the loss to the appropriate local authorities and the rental company as soon as reasonably possible;
(c) Obtain all information on any other party involved in an Accident, such as name, address, insurance information and driver's license number; and
(d) Provide Us with all documentation such as rental agreement, police report and damage estimate.

**The following is added to SECTION VI - GENERAL LIMITATIONS AND EXCLUSIONS:**

The following exclusions apply to Renters Collision Insurance:

We will not pay for any loss involving or attributable to, in whole or in part, the following:

1. Any obligation You assume under any agreement (except insurance collision Deductible);
2. Rentals of trucks, campers, trailers, off-road vehicles, motor bikes, motorcycles, recreational vehicles, limousines or other commercial or Exotic Vehicles;
3. Any Loss that occurs if You are in violation of the rental agreement;
4. Failure to report the loss to the proper local authorities and the rental company;
5. Damage to any other vehicle, structure or person as a result of a covered Loss;
6. Glass damage;
7. Overhead damage;
8. Tire damage;

**STARR INDEMNITY & LIABILITY COMPANY**

9.  Antique motor vehicles;
10. Any contents in the rental car;
11. Any Loss as the result of physical damage or loss attributable to mechanical breakdown or failure, wear and tear, gradual deterioration, corrosion, rust or freezing or any neglect or abuse of the vehicle by You.
12. Confiscation or expropriation by order of any government


There are no other changes to the Policy.



**STARR**
INDEMNITY & LIABILITY

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

**GENERAL LIMITATIONS AND EXCLUSIONS ENDORSEMENT**

The Policy to which this endorsement is attached is amended as follows.

The following changes apply to **SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS:**

The exclusion which reads as follows:

Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving; spelunking or caving; or rock climbing;

is deleted in its entirety and replaced with the following:

Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;

Nehemiah E. Ginsburg,
General Counsel and Secretary

Steve Blakey,
President and Chief Executive Officer

**STARR**
INDEMNITY & LIABILITY

Dallas, Texas
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

**TRIP CANCELLATION AND INTERRUPTION ENDORSEMENT**

The Policy to which this endorsement is attached is amended as follows.

The subsection "**The Following are the Unforeseen Events for Trip Cancellation and Trip Interruption:**" within **SECTION IV. COVERAGES**, **TRIP CANCELLATION/TRIP INTERRUPTION** is amended to include the following:

(o) You or Your Traveling Companion are called to active military duty after the Effective Date.

(p) You have, or Your Traveling Companion has, a previously approved military leave revoked or experience a military reassignment.

(q) Your transfer, within thirty (30) days of the date of Your Covered Trip, by the employer with which You are employed on the Effective Date that requires relocation of Your principal residence.

(r) Your Traveling Companion's transfer, within thirty (30) days of the date of Your Covered Trip, by the employer with which Your Traveling Companion is employed on the Effective Date that requires relocation of Your Traveling Companion's principal residence.

(s) After at least three (3) years of full time continuous employment at the same company, You are terminated or laid-off from full time employment at such company within thirty (30) days of the date of Your Covered Trip.

(t) After at least three (3) years of full time continuous employment at the same company, Your Traveling Companion is terminated or laid-off from full time employment at such company within thirty (30) days of the date of Your Covered Trip.

Nehemiah E. Ginsburg,
General Counsel and Secretary

Steve Blakey,
President and Chief Executive Officer



**Dallas, Texas**
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

## Pre-Existing Condition Endorsement

### SECTION I. GENERAL DEFINITIONS

The Policy to which this endorsement is attached is amended as follows.

Within **SECTION I. GENERAL DEFINITIONS**, the definition that reads as follows:

> "Pre-Existing Condition" means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 180 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 180 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

is deleted in its entirety and replaced with the following:

> "**Pre-Existing Condition**" means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 60 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 60 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

Nehemiah E. Ginsburg,
General Counsel and Secretary

Steve Blakey,
President and Chief Executive Officer



**Dallas, Texas**
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

**TRAVEL INSURANCE POLICY**

**<u>Bronze Plan</u>**

This Policy is issued in consideration of enrollment and payment of the premium due. This Policy describes all of the travel insurance benefits underwritten by Starr Indemnity & Liability Company, herein referred to as We, Us, and Our. This Policy is a legal contract between You (herein referred to as You or Your) and Us. It is important that You read Your Policy carefully. Insurance benefits vary from program to program. Please refer to the Schedule of Benefits. It provides You with specific information about the program You purchased.

**FOURTEEN DAY FREE LOOK**

You may cancel insurance under the Policy by giving Our Administrator or Us written notice of cancellation on the earlier of: (a) 14 days from the date Your Policy is purchased; or (b) prior to Your Scheduled Departure Date. If You do this, We will refund Your premium paid provided You have not filed a claim under the Policy.

**TABLE OF CONTENTS**

**SECTION I - GENERAL DEFINITIONS**
**SECTION II - GENERAL PROVISIONS**
**SECTION III - ELIGIBILITY AND PERIOD OF COVERAGE**
**SECTION IV - COVERAGES**
**SECTION V - CLAIMS PROCEDURES AND PAYMENT**
**SECTION VI - GENERAL LIMITATIONS AND EXCLUSIONS**

**SECTION I. GENERAL DEFINITIONS**

**"Accident"** means a sudden, unexpected, unusual, specific event that occurs at an identifiable time and place during the Covered Trip and also includes a mishap to a conveyance in which You are traveling.

**"Accidental Injury"** means bodily injury caused by an Accident, sustained on or after the Effective Date of this coverage and on or before the Scheduled Return Date. Benefits for Accidental Injury will not be paid for any loss caused by Sickness or other bodily diseases or infirmity.

**"Assistance Company"** means the service provider with whom We have contracted to coordinate and deliver emergency travel assistance, medical evacuation and repatriation.

**"Complications of Pregnancy"** means a condition that is distinct from pregnancy but is adversely affected or caused by pregnancy.

**"Covered Expenses"** means expenses incurred by You that are: (a) for Medically Necessary services, supplies, care or treatment; (b) due to a Covered Sickness or Accidental Injury; (c) prescribed, performed or ordered by a Physician; (d) Reasonable and Customary Charges; (e) incurred while insured under the Policy; and (f) that do not exceed the maximum limits shown on the Schedule of Benefits for the relevant stated benefit.

**"Covered Sickness"** means an illness or disease that is diagnosed or treated by a Physician on or after the Effective Date of insurance and while You are covered under the Policy in accordance with the terms and provisions of this Policy.

**"Covered Trip"** means a trip taken during the Policy period for which You request insurance coverage and pay the required premium, where:
(a) you travel more than 100 miles from Your home to a destination outside Your City of residence;
(b) the purpose of the trip is business or pleasure; and
(c) the trip has defined departure and return dates.

**"Deductible"** means the dollar amount You must contribute to the loss.

**STARR INDEMNITY & LIABILITY COMPANY**

**"Dependent Child(ren)"** means Your child(ren), including an unmarried child, stepchild, legally adopted child or foster child who is: (a) less than age 19 or at least age 19 but less than age 23 and regularly attends an accredited school or college; and (b) who is primarily dependent on You for support and maintenance.

**"Domestic Partner"** means two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring. A domestic partnership shall be established in California when both persons file a Declaration of Domestic Partnership with the Secretary of State pursuant to this division, and, at the time of filing, all of the following requirements are met:

   a.    Neither person is married to someone else or is a member of another domestic partnership with someone else that has not been terminated, dissolved, or adjudged a nullity.

   b.    The two persons are not related by blood in a way that would prevent them from being married to each other in this state.

   c.    Both persons are at least 18 years of age, except as provided in Section 297.1.

   d.    Either of the following:

   (1)  Both persons are members of the same sex.

   (2)  One or both of the persons meet the eligibility criteria under Title II of the Social Security Act as defined in Section 402(a) of Title 42 of the United States Code for old-age insurance benefits or Title XVI of the Social Security Act as defined in Section 1381 of Title 42 of the United States Code for aged individuals. Notwithstanding any other provision of this section, persons of opposite sexes may not constitute a domestic partnership unless one or both of the persons are over 62 years of age.

   e.    Both persons are capable of consenting to the domestic partnership.

**"Effective Date"** means the date and time Your coverage begins, as outlined in Section III. Eligibility and Period of Coverage of the Policy.

**"Emergency Medical Evacuation"** means that the Assistance Company has determined that Your medical condition warrants immediate Transportation from the place where You are injured or sick during a Covered Trip to the nearest Hospital where appropriate medical treatment can be obtained.

**"Emergency Sickness"** means an illness or disease that is diagnosed by a legally licensed Physician and that meets all of the following criteria: (a) there is a present severe or acute symptom requiring immediate care and the failure to obtain such care could reasonably result in serious deterioration of Your condition or place Your life in jeopardy; (b) the severe or acute symptom occurs suddenly and unexpectedly; and (c) the severe or acute symptom occurs while Your coverage is in force and during Your Covered Trip.

**"Emergency Treatment"** means necessary medical treatment, including services and supplies that must be performed during the Covered Trip due to the serious and acute nature of the Accidental Injury or Covered Sickness.

**"Family Member"** means You or Your Traveling Companion's legal or common law spouse, Domestic Partner, Your or Your spouse's or Domestic Partner's caregiver, parent, legal guardian, step-parent, grandparent, parents-in-law, grandchild, natural or adopted child, foster child, ward, step-child, children-in-law, brother, sister, step-brother, step-sister, brother-in-law, sister-in-law, aunt, uncle, niece or nephew.

**"Hospital"** means a facility that:

(a) holds a valid license if it is required by the law;

(b) operates primarily for the care and treatment of sick or injured persons as in-patients;

(c) has a staff of 1 or more Physicians available at all times;

(d) provides 24 hour nursing service and has at least 1 registered professional nurse on duty or call;

(e) has organized diagnostic and surgical facilities, either on the premises or in facilities available to the Hospital on a pre-arranged basis;

(f) is not primarily a nursing care facility, rest home, convalescent home or similar establishment or any separate ward, wing or section of a Hospital used as such; and

(g) is not a treatment or rehabilitation facility for drug addiction or alcohol abuse.

**"Insured"** means a person who has enrolled for insurance under this Policy.

**"Land/Sea Arrangements"** means Your land and/or sea arrangements booked through the Travel Supplier for your Covered Trip.

**"Medically Necessary"** means that a treatment, service or supply is: (a) essential for diagnosis, treatment or care of the Accidental Injury or Covered Sickness for which it is prescribed or performed; (b) meets generally accepted standards of medical practice; and (c) is ordered by a Physician and performed under his or her care, supervision or order.

STARR INDEMNITY & LIABILITY COMPANY

**"Physician"** means a licensed health care provider of medical, surgical or dental services acting within the scope of his or her license and rendering care or treatment to You that is appropriate for Your medical condition(s) and locality where the services are provided. The treating Physician may not be You, a Traveling Companion or a Family Member.

**"Policy"** means this individual Policy document, the Schedule of Benefits, and any endorsements, riders or amendments that will attach during the period of coverage.

**"Pre-Existing Condition"** means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 60 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 60 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

**"Reasonable and Customary / Reasonable and Customary Charges"** means an expense that:
(a) is charged for treatment, supplies or Medically Necessary services to treat Your condition;
(b) does not exceed the usual level of charges for similar treatment, supplies or medical services in the locality where the expense is incurred; and
(c) does not include charges that would not have been made in the absence of insurance.
In no event will the Reasonable and Customary Charges exceed the actual amount charged.

**"Scheduled Departure Date"** means the date on which You are originally scheduled to leave on the Covered Trip.

**"Scheduled Return Date"** means the date on which You are originally scheduled to return to the point of origin or to a different final destination or to Your primary residence from a Covered Trip.

**"Traveling Companion"** means person(s) booked to accompany You on Your Covered Trip. "Traveling Companion" does not include a group or tour leader unless You are sharing room accommodations with the group or tour leader.

**"Travel Supplier"** means any entity that provides travel services or travel arrangements.

**"Unforeseen"** means not anticipated or expected.

**"We, Us, Our"** means Starr Indemnity & Liability Company and its agents.

**"You" and "Your"** means the Insured.


## SECTION II. GENERAL PROVISIONS

The following provisions apply to all coverages:

**LEGAL ACTIONS:** No legal action for a claim can be brought against Us until 60 days after We receive Proof of Loss. No such action shall be brought after the expiration of 3 years after the time written proof of loss is required to be furnished.

**MISREPRESENTATION AND FRAUD:** Your coverage shall be void if, whether before or after a loss, You have concealed or misrepresented any material fact or circumstance concerning the Policy, the subject thereof or Your interest therein or if You commit fraud or material misrepresentation in connection with this insurance coverage.

The falsity of any statement in the application shall not bar the right to recovery under the policy unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by Us.

**SUBROGATION:** To the extent We pay for a loss suffered by You, We will take over the rights and remedies You had relating to the loss. You must help Us to preserve Our rights against those responsible for the loss. This may involve signing any papers and taking any other steps We may reasonably require. If We take over Your rights, You (or Your designated representative if a minor) must sign an appropriate subrogation form supplied by Us. Failure to comply with this provision could void or limit coverage. We will not retain any payments until You have been made whole with regard to any claim payable under the Policy.

**CONTROLLING LAW:** Any part of the Policy that conflicts with the state law where the Policy is issued is changed to meet the minimum requirements of that law.

**PREMIUM:** The required premium must be paid to Us, Our agent or to the Travel Supplier prior to the Scheduled Departure Date of the Covered Trip.

STARR INDEMNITY & LIABILITY COMPANY

**INSURANCE WITH OTHER INSURERS:** If there is other valid coverage, not with Us, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which We have not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this Policy shall be limited to such proportion of the loss as the amount that would otherwise have been payable hereunder plus the total of the like amounts under all such other valid coverages for the same loss for which We had notice bears to the total like amounts under all valid coverages for such loss, and for the return of such portion of the premiums paid as shall exceed the pro-rata portion for the amount so determined. For the purpose of applying this provision when other coverage is on a provision of service basis, the "like amount" of such other coverage shall be taken as the amount that the services rendered would have cost in the absence of such coverage.

**ENTIRE CONTRACT; CHANGES:** This Policy, Your application or enrollment material, and any attachments represent the entire contract between You and Us. No change in this Policy shall be valid until approved by an executive officer of Ours and unless such approval be endorsed hereon or attached hereto. No agent has authority to change this Policy or to waive any of its provisions.

**TIME LIMIT ON CERTAIN DEFENSES:** (a) After two years from the date of issue of this Policy, no misstatements, except fraudulent misstatements, made by the applicant in the application for this Policy shall be used to void this Policy or to deny a claim for loss incurred or disability (as defined in this Policy) commencing after the expiration of the 2 year period.
(b) No claim for loss incurred or disability (as defined in this Policy) commencing after 2 years from the date of issue of this Policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this Policy.

## SECTION III. ELIGIBILITY AND PERIOD OF COVERAGE

**ELIGIBILITY:** Each Insured must enroll for his or her own insurance and pay any premium due. If a minor Dependent Child is traveling with a parent, the parent must enroll himself/herself for insurance and also enroll the child for his or her own insurance and pay any premium due. If accepted by Us, each person will become an Insured.

**EFFECTIVE DATE AND POLICY TERM:** The Effective Date of Your Policy is shown in the confirmation of benefits.

**When Your Coverage for Benefits Begins:**
Subject to payment of any premium due, coverage begins at the later of the time of Your departure on the Scheduled Departure Date; or Your actual departure for Your Covered Trip.

**When Your Coverage Ends:**
Coverage is effective for the stated term shown in the confirmation of benefits. In addition, Your coverage will end at 11:59 P.M. local time on the earliest of the following dates:
   (a) the date You cancel Your Covered Trip;
   (b) the Scheduled Return Date as stated on the travel tickets;
   (c) the date You return to Your origination point if prior to the Scheduled Return Date; or
   (d) the date You leave or change Your Covered Trip (unless due to Unforeseen and unavoidable circumstances covered
      by the Policy).

If You extend the return date, coverage will terminate at 11:59 P.M., local time, at Your location on the Scheduled Return Date.

## SECTION IV. COVERAGES

**We will provide the coverage described in this policy only if it is listed on the Schedule of Benefits.**

## ACCIDENTAL DEATH AND DISMEMBERMENT

**STARR INDEMNITY & LIABILITY COMPANY**

We will pay a percentage of the Principal Sum listed in the Schedule of Benefits when You, as a result of an Accidental Injury occurring during the Covered Trip, sustain a loss shown in the Table of Losses below. The loss must occur within 365 days after the date of the Accident causing the loss.

If more than one loss is sustained as the result of an Accident, the amount payable shall be the largest amount of a sustained loss shown in the Table of Losses.

## TABLE OF LOSSES

| Loss of: | Percentage of Principal Sum: |
| --- | --- |
| Life | 100% |
| Both hands or both feet | 100% |
| Sight of both eyes | 100% |
| One hand and one foot | 100% |
| Either hand or foot and sight of one eye | 100% |
| Either hand or foot | 50% |
| Sight of one eye | 50% |
| Speech and hearing in both ears | 100% |
| Speech | 50% |
| Hearing in both ears | 50% |

Loss with regard to:
(a)  hand or foot, means actual complete severance through and above the wrist or ankle joints;
(b)  eye means an entire and irrecoverable loss of sight; and
(c)  speech or hearing means entire and irrecoverable loss of speech or hearing of both ears.

No benefit is payable for loss resulting from or due to stroke, cerebral vascular or cardiovascular Accident or event, myocardial infarction (heart attack), coronary thrombosis or aneurysm.

**EXPOSURE:** We will pay benefits for covered losses that result if You are unavoidably exposed to the elements due to an Accident. The loss must occur within 365 days after the event that caused the exposure.

**DISAPPEARANCE:** We will pay benefits for loss of life if Your body cannot be located one year after Your disappearance due to an Accident.

## EMERGENCY ACCIDENT AND EMERGENCY SICKNESS MEDICAL EXPENSE

We will pay Reasonable and Customary Charges up to the maximum limit shown on the Schedule of Benefits, subject to the Deductible, if You incur necessary Covered Expenses while on your Covered Trip and as a result of an Accidental Injury or Emergency Sickness that first manifests itself during the Covered Trip.

Covered Expenses for this benefit include but are not limited to:
(a)  the services of a Physician;
(b)  charges for Hospital confinement and use of operating rooms;
(c)  Hospital or ambulatory medical-surgical center services (this may also include expenses for a cruise ship cabin or Hotel room, not already included in the cost of Your Covered Trip, if recommended as a substitute for a Hospital room for recovery from an Emergency Sickness);
(d)  charges for anesthetics (including administration);
(e)  x-ray examinations or treatments, and laboratory tests;
(f)  ambulance service;
(g)  drugs, medicines, prosthetics and therapeutic services and supplies; and
(h)  emergency dental treatment for the relief of pain.

We will pay benefits, up to the amount shown on the Schedule of Benefits, for emergency dental treatment for Accidental Injury to natural teeth.

**STARR INDEMNITY & LIABILITY COMPANY**

We will not pay benefits in excess of the Reasonable and Customary Charges.

We will not cover any expenses incurred by another party at no cost to You or already included within the cost of the Covered Trip.

We will advance payment to a Hospital, up to the maximum shown on the Schedule of Benefits, if needed to secure Your admission to a Hospital during the Covered Trip because of Accidental Injury or Emergency Sickness.

## EMERGENCY MEDICAL EVACUATION & MEDICALLY NECESSARY REPATRIATION

We will pay, subject to the limitations set out herein, for covered Emergency Medical Evacuation expenses reasonably incurred if You suffer an Accidental Injury or Emergency Sickness that warrants Your Emergency Medical Evacuation while You are on a Covered Trip. Benefits payable are subject to the Maximum Benefit per Insured shown on the Schedule of Benefits for all Emergency Medical Evacuations due to all injuries from the same Accident or all Emergency Sickness from the same or related causes.

A legally licensed Physician, in coordination with Our designated Assistance Company, must order the Emergency Medical Evacuation and must certify that the severity of Your Accidental Injury or Emergency Sickness warrants Your Emergency Medical Evacuation to the closest adequate medical facility. The Assistance Company or We must review and approve the necessity of the Emergency Medical Evacuation based on the inadequacy of local medical facilities. The Emergency Medical Evacuation must be coordinated through the most direct and economical conveyance and route possible, such as air or land ambulance or commercial airline carrier.

Covered Emergency Medical Evacuation expenses are those for Medically Necessary Transportation, including Reasonable and Customary medical services and supplies incurred in connection with Your Emergency Medical Evacuation. Expenses for Transportation must be: (a) recommended by the attending Physician; (b) required by the standard regulations of the conveyance transporting You; and (c) reviewed and pre-approved by Our designated Assistance Company.

We will also pay Reasonable and Customary expenses, for escort expenses required by You, if You are disabled during a Covered Trip and an escort is recommended in writing by an attending Physician and such expenses are pre-approved by Our designated Assistance Company.

If You are hospitalized for more than the number of days shown on the Schedule of Benefits following a covered Emergency Medical Evacuation, We will pay, subject to the limitations set out herein, for expenses:

(a) to return You to your residence in the United States, with an attendant if necessary, any of Your Dependent Children who were accompanying You when the Accidental Injury or Emergency Sickness occurred and were left alone as a result of same. Our payment will not exceed the cost of a single one-way economy airfare ticket, less the value of applied credit from any unused return travel tickets per person; and
(b) to bring 1 person chosen by You to and from the Hospital or other medical facility where You are confined if You are alone, but not to exceed the cost of 1 round-trip economy airfare ticket.

In addition to the above Covered Expenses, if We have previously evacuated You to a medical facility, We will pay Your airfare costs from that facility to Your primary residence, within 1 year from Your original Scheduled Return Date, less refunds from Your unused Transportation tickets. Airfare costs will be economy or first class if Your original tickets are first class. This benefit is available only if it is not provided under another coverage in the Policy.

Transportation of Spouse or Domestic Partner: If You are confined to the Hospital for more than the number of days shown on the Schedule of Benefits or if the attending Physician certifies that due to Your Accidental Injury or Emergency Sickness, You will be required to stay in the Hospital for more than the number of consecutive days shown on the Schedule of Benefits or if You die on the Covered Trip and require Repatriation of Remains, We will return Your spouse or Domestic Partner to Your primary residence. Our payment will not exceed the cost of a single one-way economy airfare ticket, less the value of applied credit from any unused return travel ticket.

**STARR INDEMNITY & LIABILITY COMPANY**

Escort Service: We will pay to return any of Your children who were accompanying You at the time of Your Accidental Injury or Emergency Sickness back to Your primary residence, including the cost of an attendant for a minor child. Such expenses shall not exceed the cost of a one-way economy airfare ticket, less the value of any applied credit from any unused return travel tickets for each person. The escort service must be arranged and approved by Us or Our designated Assistance Company.

## REPATRIATION OF REMAINS

We will pay the reasonable Covered Expenses incurred to return Your body to Your place of permanent residence if You die due to Accidental Injury or a Covered Sickness during the Covered Trip. No payment will exceed the maximum shown on the Schedule of Benefits.

Covered Expenses include: (a) The collection of the body of the deceased; (b) the transfer of the body to a professional funeral home; (c) embalming and preparation of the body or cremation if so desired; (d) standard shipping casket; (e) any required consular proceedings; (f) the transfer of the casket to the airport and boarding of the casket onto the plane; (g) any required permits and corresponding airfare; and (h) the transfer of the deceased to their final destination. All Covered Expenses must be approved in advance by Our designated Assistance Company.

Escort Service: We will pay to return any of Your children who were accompanying You at the time of Your death back to Your primary residence, including the cost of an attendant for a minor child. Such expenses shall not exceed the cost of a one-way economy airfare ticket, less the value of any applied credit from any unused return travel tickets for each person. The escort service must be arranged and approved by Us or Our designated Assistance Company.

## SECTION V. CLAIMS PROCEDURES AND PAYMENT

All benefits will be paid in United States dollars. The following provisions apply to all benefits.

**CHANGE OF BENEFICIARY:** Unless the Insured makes an irrevocable designation of beneficiary, the right to change of beneficiary is reserved to the Insured and the consent of the beneficiary or beneficiaries shall not be requisite to surrender or assignment of this Policy or to any change of beneficiary or beneficiaries, or to any other changes in this Policy.

**PAYMENT OF CLAIMS:** Indemnity for loss of life will be payable in accordance with the beneficiary designation and the provisions respecting such payment which may be prescribed herein and effective at the time of payment. If no such designation or provision is then effective, such indemnity shall be payable to the estate of the Insured. Any other accrued indemnities unpaid at the Insured's death may, at Our option, be paid either to such beneficiary or to such estate. All other indemnities will be payable to the Insured.

If any indemnity of this Policy shall be payable to the estate of the Insured, or to an Insured or beneficiary who is a minor or otherwise not competent to give a valid release, the insurer may pay such indemnity, up to an amount not exceeding $1,000, to any relative by blood or connection by marriage of the Insured or beneficiary who is deemed by the insurer to be equitably entitled thereto. Any payment made by the insurer in good faith pursuant to this provision shall fully discharge the insurer to the extent of such payment.

**NOTICE OF CLAIM:** Written notice of claim must be given by the claimant (either You or someone acting for You) to Us or Our authorized designee within 20 days after a covered loss first begins or as soon as reasonably possible. Notice must include Your name, the Travel Supplier's name and the Policy number. Notice must be sent to Our administrative office, at the following address: 399 Park Avenue, 8th Floor, New York, NY 10022 or to Our authorized designee.

**CLAIM FORMS:** When We receive a notice of claim, We will send You the forms to be used in filing proof of claim. If We or Our designee do not send You these forms within 15 days, You can meet the Proof of Loss requirement by sending Us or Our designee a written statement of the occurrence, nature and extent of the loss within the time allowed for filing Proof of Loss under this Policy.

STARR INDEMNITY & LIABILITY COMPANY

**PROOFS OF LOSS**: Written proof of loss must be furnished to the insurer at its said office in case of claim for loss for which this Policy provides any periodic payment contingent upon continuing loss within 90 days after the termination of the period for which the insurer is liable and in case of claim for any other loss within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

**OTHER INSURANCE WITH US:** You may be covered under only 1 travel Policy with Us for each Covered Trip. If You are covered under more than 1 such Policy, You may select the coverage that is to remain in effect. In the event of death, the selection will be made by the beneficiary or estate. Premiums paid (less claims paid) will be refunded for the duplicate coverage that does not remain in effect.

**PHYSICAL EXAMINATION AND AUTOPSY:** We have the right to physically examine the Insured as often as is reasonably necessary while a claim is pending. We may choose the Physician. We also have the right to request an autopsy in the case of death, unless the law forbids it. We will pay the cost of the examination or autopsy.

## SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS

**Coverages to which General Exclusions apply:** The following exclusions apply to Accidental Death and Dismemberment, Emergency Accident and Emergency Sickness Medical Expense, Emergency Medical Evacuation and Medically Necessary Repatriation and Repatriation of Remains.

We will not pay for loss caused by or resulting from:

1. Pre-Existing Conditions, unless the Policy is purchased within 14 days of Your initial trip deposit. The policy for the Covered Trip must be the first and only policy issued for this travel period and destination and You must be medically able to travel at the time You purchase coverage;
2. Commission or the attempt to commit a felony by You, Your Traveling Companion, or Your Family Member, whether insured or not;
3. Dental treatment except as a result of an Accidental Injury to sound natural teeth or emergency dental treatment for relief of pain;
4. Claims resulting from expenses incurred and as a result of being intoxicated above the legal limit or under the influence of drugs or narcotics, unless prescribed by a Physician and taken in accordance with the Physician's recommendations;
5. Mental or emotional disorders, unless hospitalized as a result thereof;
6. Any non-Emergency Treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
7. Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;
8. Serving as a contractor for the military, participation in any military maneuver or training exercise, police service or military service;
9. Participation as a professional athlete, participation in non-professional, organized amateur or interscholastic athletics or sports competitions or events;
10. Piloting or learning to pilot or acting as a member of the crew of any aircraft;
11. Pregnancy and childbirth of the Insured or Traveling Companion other than Unforeseen Complications of Pregnancy if hospitalized during a Covered Trip;
12. Cosmetic surgery (except that cosmetic surgery shall not include reconstructive surgery when such service is incidental to or follows surgery resulting from trauma, infection, or other diseases of the involved part) and reconstructive surgery because of congenital disease or anomaly of a covered Dependent Child which has resulted in a functional defect;
13. Suicide, attempted suicide or any intentionally self-inflicted injury while sane or insane (in Colorado and Missouri, sane only) committed by You, Your Traveling Companion or Your Family Member, whether or not insured;

**STARR INDEMNITY & LIABILITY COMPANY**

14. Traveling for the purpose of securing medical treatment;
15. War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not) or civil war;
16. Your participation in civil disorder, riot or a felony;
17. Accidental Injury or Sickness when traveling against the advice of a Physician if the resulting loss is related to a particular condition about which the Physician advised the Insured prior to traveling;
18. Care or treatment that is not Medically Necessary;
19. Services not shown as covered; and expenses not approved by Our designated Assistance Company in advance;
20. Care or treatment for which compensation is payable under Worker's Compensation Law, any Occupational Disease Law; the 4800 Time Benefit plan or similar legislation; or
21. Directly or indirectly, the actual, alleged or threatened discharge, dispersal, seepage, migration, escape, release or exposure to any hazardous biological, chemical, nuclear radioactive material, gas, matter or contamination.

---

In Witness Whereof, We have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by Our duly authorized representative.


Nehemiah E. Ginsburg,
General Counsel and Secretary


Steve Blakey,
President and Chief Executive Officer

**STARR INDEMNITY & LIABILITY COMPANY**

**ACCIDENTAL DEATH AND DISMEMBERMENT - AIR ONLY
ENDORSEMENT**

The Policy to which this endorsement is attached is amended as follows.

The following is added to **SECTION I. GENERAL DEFINITIONS:**

In addition to the definitions in the Policy, the following definitions apply to Accidental Death and Dismemberment - Air Only Coverage:

**"Accident"** means a sudden, unexpected, unusual, specific event which occurs at an identifiable time and place, during the Covered Trip and also includes a mishap to a conveyance in which You are traveling.

**"Accidental Injuries"** means bodily injury caused by an Accident, sustained on or after the Effective Date of this coverage and on or before the Scheduled Return Date. Benefits for Accidental Injury will not be paid for any loss caused by Sickness or other bodily diseases or infirmity.

**"Physician"** means a licensed health care provider of medical, surgical or dental services acting within the scope of his or her license and rendering care or treatment to You that is appropriate for Your medical condition(s) and locality where the services are provided.  The treating Physician may not be You, a Traveling Companion or a Family Member.

The following is added to **SECTION IV. COVERAGES:**

**ACCIDENTAL DEATH AND DISMEMBERMENT -AIR ONLY**

We will pay benefits for Accidental Injuries resulting in a loss as described in the below Table of Losses , that occurs while You are riding as a passenger in or on, boarding or alighting from, any air conveyance operated under a license for the transportation of passengers for hire during the Covered Trip. The loss must occur within 365 days after the date of the Accident causing the loss. The Principal Sum is shown on the Schedule of Benefits.

**TABLE OF LOSSES**

| Loss of: | Percentage of Principal Sum: |
|---|---|
| Life | 100% |
| Both hands or both feet | 100% |
| Sight of both eyes | 100% |
| One hand and one foot | 100% |
| Either hand or foot and sight of one eye | 100% |
| Either hand or foot | 50% |
| Sight of one eye | 50% |
| Speech and hearing in both ears | 100% |
| Speech | 50% |
| Hearing in both ears | 50% |

Loss with regard to:
(a)  hand or foot, means actual complete severance through and above the wrist or ankle joints; or
(b)  eye means an entire and irrecoverable loss of sight; and
(c)  speech or hearing means entire and irrecoverable loss of speech or hearing of both ears.

**STARR INDEMNITY & LIABILITY COMPANY**

If more than one loss is sustained as the result of an Accident, the amount payable shall be the largest amount shown in the Table of Losses for the losses sustained.

**EXPOSURE:** We will pay benefits for covered losses that result if You are unavoidably exposed to the elements due to an Accident. The loss must occur within 365 days after the event which caused the exposure.

**DISAPPEARANCE:** We will pay benefits for loss of life if Your body cannot be located one year after Your disappearance due to an Accident.

**SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS** is amended as follows:

In addition to the exclusions in the Policy, the following exclusions apply to Accidental Death and Dismemberment -Air Only coverage:

1.  Pre-Existing Conditions, to the extent they are excluded in Your base Policy;
2.  Commission or the attempt to commit a felony by You, Your Traveling Companion or Your Family Member, whether insured or not;
3.  Dental treatment except as a result of an Accidental Injury to sound natural teeth or emergency dental treatment for relief of pain;
4.  Claims resulting from expenses incurred and as a result of being intoxicated above the legal limit or under the influence of drugs or narcotics, unless prescribed by a Physician and taken in accordance with the Physician's recommendations;
5.  Mental or emotional disorders, unless hospitalized as a result thereof;
6.  Any non-Emergency Treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
7.  Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;
8.  Serving as a contractor for the military, participation in any military maneuver or training exercise, police service or military service;
9.  Participation as a professional athlete; participation in non-professional, organized amateur or interscholastic athletics or sports competitions or events;
10. Piloting or learning to pilot or acting as a member of the crew of any aircraft;
11. Pregnancy and childbirth of the Insured or Traveling Companion other than Unforeseen Complications of Pregnancy if hospitalized during a Covered Trip;
12. Cosmetic surgery (except  that cosmetic surgery shall not include reconstructive surgery when such service is incidental to or follows surgery resulting from trauma, infection, or other diseases of the involved part) and reconstructive surgery because of congenital disease or anomaly of a covered Dependent Child which has resulted in a functional defect;
13. Suicide, attempted suicide or any intentionally self-inflicted injury while sane or insane (in Colorado and Missouri, sane only) committed by You, Your Traveling Companion or Your Family Member, whether or not insured;
14. Traveling for the purpose of securing medical treatment;
15. War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not) or civil war;
16. Your participation in civil disorder, riot or a felony;
17. Accidental Injury or Covered Sickness when traveling against the advice of a Physician if the resulting loss is related to a particular condition about which the Physician has advised the Insured prior to traveling;
18. Care or treatment that is not Medically Necessary;
19. Services not shown as covered; and expenses not approved by Our designated Assistance Company in advance;
20. Care or treatment for which compensation is payable under Worker's Compensation Law, any Occupational Disease Law; the 4800 Time Benefit plan or similar legislation; or
21. Directly or indirectly, the actual, alleged or threatened discharge, dispersal, seepage, migration, escape, release or exposure to any hazardous biological, chemical, nuclear radioactive material, gas, matter or contamination.

There are no other changes to the Policy.



**STARR**
INDEMNITY & LIABILITY

Dallas, Texas
Administrative Office: 399 Park Avenue, 8ᵗʰ Floor, New York, NY 10022

**GENERAL LIMITATIONS AND EXCLUSIONS ENDORSEMENT**

The Policy to which this endorsement is attached is amended as follows.

The following changes apply to **SECTION VI. GENERAL LIMITATIONS AND EXCLUSIONS:**

The exclusion which reads as follows:

Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving; spelunking or caving; or rock climbing;

is deleted in its entirety and replaced with the following:

Participating in bodily contact sports; skydiving; mountaineering where ropes or guides are normally used; hang gliding; parachuting; any race by horse, motor vehicle or motorcycle; bungee cord jumping; scuba diving, unless accompanied by a dive master where depth does not exceed one-hundred (100) feet; spelunking or caving; or rock climbing;


Nehemiah E. Ginsburg,
General Counsel and Secretary


Steve Blakey,
President and Chief Executive Officer



**Dallas, Texas**
Administrative Office: 399 Park Avenue, 8th Floor, New York, NY 10022

**Pre-Existing Condition Endorsement**

**SECTION I. GENERAL DEFINITIONS**

The Policy to which this endorsement is attached is amended as follows.

Within **SECTION I. GENERAL DEFINITIONS**, the definition that reads as follows:

"Pre-Existing Condition" means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 180 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 180 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

is deleted in its entirety and replaced with the following:

"**Pre-Existing Condition**" means any Accidental Injury, sickness or condition of You, Your Traveling Companion or Your Family Member booked to travel with You for which medical advice, diagnosis, care or treatment was recommended or received within the 60 day period ending on the Effective Date. Sicknesses or conditions are not considered pre-existing if the sickness or condition for which prescribed drugs or medicine is taken remains controlled without any change in the required prescription throughout the entire 60 day period ending on the Effective Date and no medical advice, diagnosis, care or treatment has otherwise been received.

Nehemiah E. Ginsburg,
General Counsel and Secretary

Steve Blakey,
President and Chief Executive Officer

# EXHIBIT B

**Michael Twersky**

| | |
|---|---|
| **From:** | Lourdes Isaacson <kevlou1388@gmail.com> |
| **Sent:** | Tuesday, November 17, 2020 6:54 PM |
| **To:** | Seven Corners |
| **Subject:** | REDACTED |

Dear Sirs/Madams

I am writing in attempts to file another trip cancellation claim under Certificate No. REDACTED with regards to our losses related to the insured travel that was cancelled.  We are both insureds under the travel plan sold to us by John Hancock Insurance Agency and Starr Indemnity & Liability Company. Even though you have denied our claim for payment due to this cancelled travel two times, we think we are still entitled to a refund for a portion of the premium we paid for benefits that were to take effect during our travel, but never did because the trip was cancelled by Philippine Airlines.

Sincerely yours,

Lourdes & Kevin Issacson

# EXHIBIT C



---------- Forwarded message ---------
From: **JHIA CS** <jhia_cs@sevencorners.com>
Date: Thu, Nov 19, 2020 at 11:17 AM
Subject: RE: Claim REDACTED
To: kevlou1388@gmail.com <kevlou1388@gmail.com>


Hi Lourdes,

Thank you for your email. I reviewed your account and unfortunately there is not a benefit that can provide coverage for a cancellation claim for a trip being cancelled on you due to pandemic. We sincerely apologize we are not able to provide a more favorable response.

Moving forward, the team here at Seven Corners, along with its Underwriters and Carriers, are working diligently to ensure our customers are protected should another event like COVID-19 present itself. In the meantime, I sincerely wish you health and safety as you yourself navigate through these difficult times.

Kind regards,
Laura O.


--------------- Original Message ---------------
**From:** Lourdes Isaacson [kevlou1388@gmail.com]
**Sent:** 11/17/2020, 6:54 PM
**To:** claims@sevencorners.com
**Subject:** Claim REDACTED

Dear Sirs/Madams

I am writing in attempts to file another trip cancellation claim under Certificate No. REDACTED with regards to our losses related to the insured travel that was cancelled.  We are both insureds under the travel plan sold to us by John Hancock Insurance Agency and Starr Indemnity & Liability Company. Even though you have denied our claim for payment due to this cancelled travel two times, we think we are still entitled to a refund for a portion of the premium we paid for benefits that were to take effect during our travel, but never did because the trip was cancelled by Philippine Airlines.

        Sincerely yours,

        Lourdes & Kevin Issacson



ref:_00DU0Ko0F._5004Us4DEa:ref